*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 39**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BOBBY NEVARES,
*Appellant,*

*v.*

ADOPTIVE COUPLE,
*Appellees.*

No. 20151073
Filed August 26, 2016

On Certification from the Court of Appeals

Fourth District, Provo
The Honorable Claudia Laycock
No. 104402485

Attorneys:

Wesley D. Hutchins, West Jordan, for appellant

Brent D. Wride and Tiffany M. Brown, Salt Lake City, for appellees

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

¶1 The district court dismissed Bobby Nevares's action seeking to establish his paternity in and custody of a child he believes to be his son (Child). Child's prospective adoptive parents (Adoptive Couple) intervened and moved to dismiss, arguing that the district court lacked subject matter jurisdiction under the Utah Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* UTAH CODE § 78B-13-101 to -318. We agree that the district court does not have subject matter jurisdiction to resolve custody issues involving Child and therefore affirm the district court.

## BACKGROUND

¶2 Nevares filed this action to establish paternity and custody over Child. Both Nevares and Mother were, and remain, residents of Colorado. According to Nevares, Child was conceived during a brief relationship with Mother. Nevares did not become aware of the pregnancy until August 2010—approximately six weeks before Child's birth. At that time, Mother informed Nevares of her intention to place Child for adoption. In mid-September, Nevares visited a Colorado-based adoption agency and indicated on an "Anticipated Relinquishment Reply Form" that he intended to contest the termination of his parental rights.

¶3 Mother knew of Nevares's efforts to preserve his parental rights. But Mother nevertheless travelled to Utah two days before Child's birth without telling Nevares. Mother gave birth to Child in Utah on September 29, 2010, and on the next day she relinquished Child to Adoption Center of Choice, a Utah-based adoption agency.

¶4 Nevares learned Child had been born in Utah, and filed a petition in Utah district court to establish paternity. The petition, filed in October 2010, asked for immediate and sole custody of Child. Mother and Adoption Center of Choice opposed his petition, arguing that Nevares was precluded from establishing paternity because Mother was underage at the time of Child's conception. *See* UTAH CODE § 78B-6-111 (depriving unmarried biological fathers of notice and any right to consent to an adoption involving a child conceived as the result of a sexual offense). They also argued that Nevares had failed to perfect his paternal rights as Utah law requires. *See id.* § 78B-6-122. The district court agreed with Adoptive Couple's second argument and dismissed the case.

¶5 Nevares appealed the dismissal. In *Nevares v. M.L.S.* (*Nevares I*), 2015 UT 34, 345 P.3d 719, this court affirmed the district court's ruling that Utah Code section 78B-6-111 did not apply because the allegedly illegal sexual activity occurred between two Colorado residents in Colorado and therefore lacked a sufficient nexus to Utah to allow the application of section 78B-6-111. *Nevares I*, 2015 UT 34, ¶ 28. We concluded that Nevares would not have been held liable for a sexual offense under Utah law and was therefore not prevented from petitioning the court to establish his parental rights to Child. *Id.* However, we also held that the district court erred when it dismissed the case based upon Nevares's failure to take certain affirmative steps to perfect his parental rights. We concluded that the district court erroneously interpreted Utah law to require Nevares to

avail himself of opportunities to establish his paternity under Colorado law, when Colorado law permitted, but did not require, such steps. *Id.* ¶ 24. We held that the district court's interpretation of Utah Code section 78B-6-122 violated due process principles because "[i]f we construed Utah law to require Nevares to fulfill requirements not imposed on him by Colorado law, we would be holding him to a legal regime to which he could not reasonably have expected to be bound." *Id.* ¶ 25. We therefore reversed the district court's dismissal order and remanded for further proceedings. *Id.* ¶ 47.

¶6 At the time of the *Nevares I* decision, neither this court nor Nevares knew Child's whereabouts. Adoptive Couple first appeared in the Utah litigation after remand from this court when Adoptive Couple intervened in Nevares's action to request that his suit be dismissed. Invoking the UCCJEA, Adoptive Couple argued that Illinois, and not Utah, had subject matter jurisdiction to make custody determinations concerning Child. *See* UTAH CODE § 78B-13-201. Adoptive Couple's district court pleadings brought to light a number of facts that the Utah courts, and presumably Nevares, had not previously known.

¶7 Adoptive Couple explained that Adoption Center of Choice placed Child with Adoptive Couple on the same day that Mother relinquished her rights to Child. Adoptive Couple had travelled to Utah from Illinois to accept Child into their lives. They remained in Utah for another week before they returned to Illinois with Child. Child was living in Illinois when Nevares filed his Utah paternity suit on October 18, 2010. Except for the first eight days of his life, Child has resided in Illinois. Adoptive Couple filed an adoption action in an Illinois court on November 4, 2010, and that same day the Illinois court issued an interim custody order granting them physical custody of Child. Adoptive Couple's Illinois adoption case remains pending.

¶8 After Adoptive Couple made the district court aware of this factual history, the district court granted their motion to dismiss. The district court concluded that Utah was not Child's home state for purposes of Utah Code section 78B-13-201, as Child was not living in Utah with a parent or person acting as a parent at the time Nevares filed his action. The district court therefore dismissed the case for lack of subject matter jurisdiction. The district court also determined that even if Utah had been Child's home when Nevares filed his action, Utah is no longer a convenient forum to resolve the dispute.

For this reason, the district court ruled that even if it possessed jurisdiction, it would decline to exercise it. *See id.* § 78B-13-207.

¶9 Nevares appeals.

## ISSUES AND STANDARD OF REVIEW

¶10 Nevares raises multiple arguments challenging the district court's dismissal order, but we resolve his appeal on the threshold question of Utah's subject matter jurisdiction under the UCCJEA.[1] "'Whether a district court has subject matter jurisdiction is a question of law' and we review the district court's determination for correctness." *Summerhaze Co. v. Federal Deposit Insurance*, 2014 UT 28, ¶ 8, 332 P.3d 908 (citation omitted).

## ANALYSIS

¶11 The UCCJEA closely follows a model act that has been adopted in Utah, Illinois, and every other state except for Massachusetts. *See* UNIFORM CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT, 9 U.L.A. 655 (1997).[2] The model act exists to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." *Id.* § 101 cmt.; *see also Stephens v. Fourth Judicial District Court*, 128 P.3d 1026, 1029 (Mont. 2006) (identifying one of the UCCJEA's primary purposes as "avoiding the jurisdictional competition and conflict that flows from hearings in

---

[1] Because we conclude that Utah lacks subject matter jurisdiction, we need not address the district court's alternate ruling that Utah is an inconvenient forum to litigate Nevares's claims.

[2] Nevares asserts that the UCCJEA does not control because it "does not govern . . . an adoption proceeding." *See* UTAH CODE § 78B-13-103(2). The district court was asked to examine whether the UCCJEA gave it jurisdiction over the paternity and custody action before it. And the custody determination that Nevares sought from the district court falls squarely within the UCCJEA's orbit.

At oral argument, Nevares suggested for the first time that the UCCJEA would permit him to bifurcate the paternity action from the custody determination and continue to litigate the question of paternity in Utah. Whether the UCCJEA would permit that course of action had Nevares requested it in the district court is an issue that was not preserved, nor was it argued in the briefs. Accordingly, we do not resolve it.

competing states when each state substantively reviews subjective factors, such as 'best interest,' for purposes of determining initial jurisdiction."). To that end, the UCCJEA promotes a framework wherein a single state is vested with jurisdiction to make child custody determinations and a uniform set of rules to determine which state is best positioned to adjudicate custody disputes. *See People ex rel. A.J.C.*, 88 P.3d 599, 615 (Colo. 2004) ("Because the jurisdictional provisions of the UCCJEA were crafted specifically to preclude simultaneous claims of jurisdiction by more than one state, it is clear under its provisions that a single jurisdiction has priority of jurisdiction.").

¶12 The UCCJEA centers much of its analytical weight on the concept of "an initial child custody determination." *See* UTAH CODE § 78B-13-201(1). Before a court can make an initial child custody determination, it must assess whether it has jurisdiction under the UCCJEA. *Id.* § 78B-13-201(1); *see also id.* § 78B-13-102(8) ("'Initial determination' means the first child custody determination concerning a particular child."). Once a state makes an initial child custody determination, that state obtains exclusive, continuing jurisdiction, which exists until that state relinquishes or is divested of its exclusive jurisdiction in accordance with the UCCJEA or a similar act. *See id.* § 78B-13-202.

¶13 Despite the fact that this case has been pending in Utah for more than five years, it appears that Utah has never made an initial child custody determination with respect to Child. At least no party has directed this court's attention to any order that the UCCJEA would deem to be an initial custody determination. So, when Adoptive Couple moved to dismiss, the question for the district court was whether it had jurisdiction to make an initial custody determination.[3]

---

[3] It is less clear whether the Illinois courts have made an initial custody determination. The Illinois case bounced between at least five different judges over a number of years. And our district court concluded that "[o]n November 10, 2010, Illinois made an interim custody order granting [Adoptive Couple] physical custody of Child." If the November 2010 Illinois order is a valid initial custody order, then Illinois gained exclusive jurisdiction over Child, and Illinois would have exclusive, continuing jurisdiction. *See* 750 ILL. COMP. STAT. 36/202; UTAH CODE § 78B-13-203 (providing that Utah

(continued . . .)

¶14 Utah Code section 78B-13-201 defines when a Utah court "has jurisdiction to make an initial child custody determination." UTAH CODE § 78B-13-201(1). Except in circumstances implicating temporary emergency jurisdiction, a Utah court can make an initial child custody determination only if

(a) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(b) a court of another state does not have jurisdiction under Subsection (1)(a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 78B-13-207 or 78B-13-208; and

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this state other than mere physical presence; and

(ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(c) all courts having jurisdiction under Subsection (1)(a) or (b) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 78B-13-207 or 78B-13-208; or

---

cannot modify a child custody determination entered by another state unless, in addition to other requirements, Utah has jurisdiction under Utah Code section 78B-13-201(1)(a) or (b)). Neither party, however, addressed this basis for potential affirmance. We will proceed, as the district court did, under the assumption that Nevares has asked the Utah courts to make the initial custody decision with respect to Child.

(d) no state would have jurisdiction under
Subsection (1)(a), (b), or (c).

*Id.* To evaluate whether the district court has UCCJEA jurisdiction over Nevares's action, we must walk through subsections (1)(a), (1)(b), and (1)(c). If none of those subsections provide a basis for Utah to exercise jurisdiction, we must determine under subsection (1)(d) whether any other state—in this case, Illinois—would have jurisdiction under subsections (1)(a), (1)(b), or (1)(c).

¶15  Utah lacks jurisdiction under section 78B-13-201(1)(a), which requires us to decide whether Utah was Child's "home state" on the day Nevares filed his petition. UCCJEA defines a child's home state as

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id.* § 78B-13-102(7).

¶16  Child was born in Utah and remained here for the first eight days of his life. During those eight days, Utah was arguably Child's home state for UCCJEA purposes. But Utah ceased to be Child's home state once he moved to Illinois with Adoptive Couple. At that point, no state met the UCCJEA's definition of Child's home state. But once Child had resided in Illinois for six months, it became Child's home state.[4] *See Doe v. Baby Girl*, 657 S.E.2d 455, 463 (S.C.

---

[4] Nevares claims that "Utah has been determined to be the 'home state' of [Child], as recognized by the Colorado court, and by all the proceedings that have occurred thus far over a period of years in Utah, including a Utah Supreme Court decision in favor of [Nevares] in *Nevares I*." Nevares provides no record citation for this assertion and we could find no reference to anything in the record suggesting that any Utah court has, at any time, determined that Utah met the UCCJEA's definition of home state. We are confident, however, that *Nevares I* did not ask this court to determine Child's home state. We

(continued . . .)

2008) ("[C]ourts in several jurisdictions have decided that when a baby who is born in one State, but within days of birth is transported to another State, the baby simply has no home State."); *In re Baby Girl F.*, 932 N.E.2d 428, 440 (Ill. App. Ct. 2008) ("Because Baby Girl was born in Illinois, but within four days of birth was transported to South Carolina, the South Carolina Supreme Court found that Baby Girl had no home state. The Illinois trial court agreed."). *But see, e.g., Adoption House, Inc. v. A.R.*, 820 A.2d 402, 409 (Del. Fam. Ct. 2003) (concluding that a two-month-old, although born in a Pennsylvania hospital, had "lived from birth" in Delaware for purposes of a UCCJEA home-state determination).

¶17 Section 78B-13-201(1)(a), which examines whether Utah has "home state" jurisdiction, grants Utah the jurisdiction to make an initial child custody determination over Child in this proceeding only if (1) Utah was Child's home state at the date of commencement of the proceeding or (2) Utah was Child's home state within six months of commencement and a parent or person acting as a parent continues to live in Utah. Utah was not Child's home state when Nevares commenced his action on October 18, 2010, because Child had moved to Illinois twelve days earlier. And even if Utah was Child's home state for the first eight days of his life, neither a parent nor a person acting as a parent continues to live in Utah. Thus, Utah does not have UCCJEA jurisdiction to make an initial child custody determination under section 78B-13-201(1)(a).

¶18 Utah also lacks jurisdiction under section 78B-13-201(1)(b), which requires a significant connection between a child and the state of Utah. Even if its other requirements are met, section 78B-13-201(1)(b) does not confer UCCJEA jurisdiction on Utah unless Child, as well as at least one parent or person acting as a parent, currently has "a significant connection with this state other than mere physical presence." UTAH CODE § 78B-13-201(1)(b)(i). Child has not resided in Utah for over five years and has no apparent connection with Utah aside from it being his birthplace and the home of Nevares's paternity litigation. And Nevares has not identified any "substantial evidence . . . available in this state concerning [Child's] care, protection, training, and personal relationships." *Id.* § 78B-13-

---

are also confident that, contrary to Nevares's counsel's representation, we did not do so.

201(1)(b)(ii). For these reasons, UCCJEA jurisdiction does not exist under section 78B-13-201(1)(b).

¶19 Utah also lacks jurisdiction under section 78B-13-201(1)(c), which confers jurisdiction on Utah if "all courts having jurisdiction under Subsection (1)(a) or (b) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum . . . ." *Id.* § 78B-13-201(1)(c). There is no indication that any state that may have jurisdiction under subsection (1)(a) or (b)—particularly, Illinois—has declined to exercise jurisdiction on the ground that Utah is a more appropriate forum.

¶20 Because Utah lacks UCCJEA jurisdiction under the first three subsections of section 78B-13-201(1), the district court may issue an initial custody determination only if "no state would have jurisdiction under Subsection (1)(a), (b), or (c)." *Id.* § 78B-13-201(1)(d). No other state, including Illinois, would have jurisdiction under subsection (1)(a) for the same reason that Utah does not. Child had no "home state" at the time Nevares commenced this proceeding because, at that time, seventeen-day-old Child had not lived "from birth" in any one state, having split his short time on earth between Utah and Illinois. *See id.* § 78B-13-102(7).

¶21 But Illinois does have jurisdiction under section 78B-13-201(1)(b). No other state has jurisdiction under subsection (1)(a), nor is there a home state that has declined to exercise jurisdiction. *See id.* § 78B-13-201(1)(b), (c). Both Adoptive Couple—each of whom qualifies as a person acting as a parent to Child[5]—and Child himself "have a significant connection with [Illinois] other than mere physical presence," as Illinois has been their domicile for more than five years. *Id.* § 78B-13-201(1)(b)(i); 750 ILL. COMP. STAT. 36/201. There is also substantial evidence available in Illinois regarding

---

[5] The UCCJEA defines a "person acting as a parent" as

> a person, other than a parent, who: (a) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (b) has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

UTAH CODE § 78B-13-102(13).

Child's "care, protection, training, and personal relationships." UTAH CODE. § 78B-13-201(1)(b)(ii). Thus, Illinois has jurisdiction to decide Child's custody consistent with the UCCJEA's "premise that the jurisdiction with the most evidence should make the custody decision . . . ." Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 75 N.D. L. REV. 301, 314 (1999).

¶22 Because Illinois would have jurisdiction to make an initial child custody decision over Child under Utah Code section 78B-13-201(1)(b), Utah lacks UCCJEA jurisdiction. For these reasons, the district court correctly dismissed the action for lack of subject matter jurisdiction. *See Ramsay v. Kane Cty. Human Res. Special Serv. Dist.*, 2014 UT 5, ¶ 17, 322 P.3d 1163 ("[W]hen a court determines it lacks subject matter jurisdiction, it 'retains only the authority to dismiss the action.'" (citation omitted)).

¶23 The lack of subject matter jurisdiction resolves this appeal as a matter of law. We acknowledge that a reader might question why five years into litigation we now address the issue of subject matter jurisdiction, especially in light of the fact that we have already considered and ruled on the substantive issues presented in *Nevares I*—a case that issued long after Child left Utah in 2010. *See* 2015 UT 34, 345 P.3d 719. Had the district court been aware of Child's relocation prior to *Nevares I*—or had we become aware of that fact during the pendency of *Nevares I*—it is quite likely that the question of subject matter jurisdiction would have been resolved earlier. *See Petersen v. Utah Bd. of Pardons*, 907 P.2d 1148, 1151 (Utah 1995) ("[S]ubject matter jurisdiction is an issue that can and should be addressed sua sponte when jurisdiction is questionable."); *Barnard v. Wassermann*, 855 P.2d 243, 248 (Utah 1993) ("[C]hallenges to subject matter jurisdiction may be raised at any time . . . ."). Unfortunately for all parties involved, no party informed this Court that Child had been moved to Illinois.[6]

---

[6] There is no indication in the record that either Nevares or the district court had reason to believe that Child had relocated to Illinois until after we decided *Nevares I*. The UCCJEA seeks to harmonize the efforts of courts located in different states by encouraging communication between those courts. *See* UTAH CODE § 78B-13-110; 750 ILL. COMP. STAT. 36/110. Time and resources could

(continued . . .)

¶24 Nevares's remaining arguments can be divided into two categories: those that attack the district court's dismissal and those that ask Utah to assume jurisdiction based upon perceived issues with litigation in Illinois and Adoptive Couple's conduct.

¶25 As to the first category, Nevares primarily argues that the district court prematurely granted Adoptive Couple's motion to dismiss by converting it into a motion for summary judgment and disregarding his pleas for additional discovery under Utah Rule of Civil Procedure 56(f). A district court can consider evidence outside the pleadings on a rule 12(b)(1) motion without converting it to a motion for summary judgment. *See Wheeler v. McPherson*, 2002 UT 16, ¶ 20, 40 P.3d 632 (stating that rule 12 "does not convert motions based on subsections (b)(1) through (5) . . . into motions for summary judgment simply because they include some affirmative evidence relating to the basis for the motion." (omission in original) (citation omitted)).[7] And while there may be factual disputes between the

---

have been saved—and lengthy uncertainty for both Child and the parties, each of whom wish to be Child's legal parent, prevented—had the Illinois court communicated with the Utah district court as the UCCJEA contemplates or if the Utah courts had been made aware earlier of the pending action in Illinois.

[7] We confess some frustration with Nevares's briefing on this issue. Nevares cites a number of cases discussing rule 12(b)(6) to support his argument. But Nevares never bothers to analyze how those cases might apply to a rule 12(b)(1) motion, nor does he acknowledge, let alone seek to distinguish, our case law that directly contradicts the argument he seeks to make. *See Wheeler*, 2002 UT 16, ¶ 20. If an attorney believes he can meet the burden of convincing this court to overturn its precedent, he should make that argument. *See ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 23, 245 P.3d 184 ("Any party asking a court 'to overturn prior precedent ha[s] a substantial burden of persuasion . . . . mandated by the doctrine of stare decisis.'" (first alteration in original) (citation omitted)); *State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) ("[We] will follow the rule of law which [we have] established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." (citation omitted)). An attorney should not, however, ignore and

(continued . . .)

parties, the facts pertaining to UCCJEA jurisdiction—primarily, Child's long-term residence in Illinois—are not in dispute.

¶26 Nevares also argues that the federal Parental Kidnapping Prevention Act (PKPA) grants Utah jurisdiction because Nevares filed his action in Utah before Adoptive Couple filed in Illinois. *See* 28 U.S.C. § 1738A(g) ("A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination."). But Nevares fails to account for the fact that the model act that forms the basis of the UCCJEA "was promulgated after the PKPA and intended to harmonize state law with the provisions of the PKPA." *In re L.S.*, 257 P.3d 201, 205 (Colo. 2011). Indeed, the UCCJEA and the PKPA contain "the same bases to establish initial jurisdiction . . . ." *Id.* at 206; *compare* UTAH CODE § 78B-13-201(1), *with* 28 U.S.C. § 1738A(c).[8] Consistent with our UCCJEA analysis, and in light of Child's five-plus years of residency in Illinois, Utah is not presently "exercising jurisdiction consistently with the provisions of [the UCCJEA and PKPA] to make a custody or visitation determination." *See* 28 U.S.C. § 1738A(g). And the PKPA does not confer subject matter jurisdiction that would not exist under the UCCJEA. In other words, the PKPA did not prevent the district court from recognizing that it lacked jurisdiction to make an initial custody determination.

¶27 Nevares's second category of arguments, those that assert Illinois lacks personal jurisdiction over him and attack Adoptive Couple's standing to bring their adoption action in Illinois, fail here because they should be directed to the Illinois courts. The Illinois court can determine whether it can properly assert personal jurisdiction over Nevares, as well as the impact of the actions that Nevares alleges Adoptive Couple have taken with unclean hands.

---

misrepresent precedent, no matter how inconvenient that law may be to the argument he wishes to press.

[8] We note that both the UCCJEA and its Illinois counterpart contain language nearly identical to the PKPA provision that Nevares cites. *See* UTAH CODE § 78B-13-206(1); 750 ILL. COMP. STAT. 36/206(a).

Those arguments cannot, as Nevares urges, serve as a sort of philosopher's stone to create subject matter jurisdiction where none exists.

¶28 Finally, we reject Nevares's argument that the district court's dismissal order deprives him of his substantive and procedural due process rights. Nevares has not been denied the opportunity to be heard, as he can still pursue his claims in the Illinois courts.[9]

**CONCLUSION**

¶29 The UCCJEA creates a uniform and predictable method for determining which state has jurisdiction to make child custody decisions. To that end, the UCCJEA will sometimes sacrifice a party's choice of forum on the altar of uniformity and predictability. Here, the UCCJEA mandates that Utah has no subject matter jurisdiction, despite the time and effort Nevares and the Utah court system have

---

[9] Adoptive Couple request an award of their attorney fees incurred on appeal. Adoptive Couple's request more closely resembles an airing of grievances than an argument designed to convince this court to award fees. We sympathize with some of Adoptive Couple's grievances—as noted above, Nevares mischaracterizes the record and ignores precedent. Adoptive Couple do not, however, tie their grievances to any Utah Rule of Appellate Procedure that would authorize us to award fees. For example, Adoptive Couple do not claim that the appeal was taken for delay or was frivolous under rule 33 of the Utah Rules of Appellate Procedure. UTAH R. APP. P. 33(a). Nor do they develop an argument under rule 24(k) that Nevares's briefs failed to "be concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters." *Id.* at 24(k). The Utah Court of Appeals has awarded fees under rule 24(k) where the failure to file a rule 24-compliant brief "placed a tremendous burden of factual and legal research on [opposing counsel]." *Simmons Media Grp., LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 48, 335 P.3d 885 (alteration in original) (citation omitted). But Adoptive Couple do not explicitly contend that Nevares's briefing imposed this type of burden upon them. Recognizing that a brief that "fails to do its job is, in a sense, its own sanction," we deny Adoptive Couple's request for attorney fees. *Demetropoulos v. Vreeken*, 754 P.2d 960, 962 (Utah Ct. App. 1988).

dedicated to adjudicating the dispute here, and the district court did not err by dismissing Nevares's complaint on that basis. We emphasize that we are not resolving any of the substantive issues that Nevares raises concerning paternity and custody. But because we lack subject matter jurisdiction, Nevares must seek relief from the Illinois court.

―――――――