2019 UT App 201

## THE UTAH COURT OF APPEALS

CAIRO BRADSHAW,
Appellant,
*v.*
CHRISTOPHER PELLEY-WHELAN,
Appellee.

Opinion
No. 20181003-CA
Filed December 12, 2019

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 174906242

Theodore R. Weckel, Attorney for Appellant

Jennifer L. Falk, Cassie J. Medura, Jarrod H. Jennings,
and Adrienne Nash Wiseman, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

MORTENSEN, Judge:

¶1      "Facts are stubborn things."[1] In this appeal, Cairo
Bradshaw asks us to reverse the district court's legal conclusion

---

1. Many attribute this quote to John Adams, *see Quote Details: John Adams: Facts are stubborn things*, http://www.quotationspage. com/quote/3235.html [https://perma.cc/TF5W-FLJH]. However *The Yale Book of Quotations* credits this saying to Bernard Mandeville. *The Yale Book of Quotations* 612 (Fred R. Shapiro Ed., Yale Univ. Press 2006) (discussing Bernard Mandeville, *An*

(continued…)

that it lacked subject matter jurisdiction to make an initial custody determination concerning her minor child (Child) under the Utah Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The crux of Bradshaw's argument is that the district court erroneously determined that Child's home state is California. Specifically, Bradshaw argues that the court's error lies in its conclusion that Child was only temporarily absent from California during the relevant six-month period leading up to when Bradshaw filed her parentage petition in Utah. However, Bradshaw assumes facts that were not adopted by the district court. And what's more, Bradshaw does not challenge the court's actual findings of fact. Accordingly, Bradshaw falls short of showing that the district court's legal conclusion concerning subject matter jurisdiction was erroneous as a matter of law. Therefore, we affirm.

## BACKGROUND

¶2 Bradshaw and Christopher Pelley-Whelan are the parents of Child, who was born in California on July 2, 2016. On October 10, 2017, Bradshaw filed a parentage petition in Utah requesting that the court make an initial custody determination of Child. Pelley-Whelan filed a motion to dismiss Bradshaw's petition for lack of subject matter jurisdiction under the UCCJEA on the ground that Child's home state was California, not Utah.[2]

---

(…continued)
*Enquiry into the Origin of Honor, and the Usefulness of Christianity in War* (1732)).

2. Pelley-Whelan filed a parentage petition in California after Bradshaw filed her petition in Utah. Because we conclude that Child's home state is California, and that California therefore has jurisdiction under the UCCJEA, the California case is relevant to

(continued…)

¶3     On March 13, 2018, after reviewing the pleadings and conducting a hearing, a commissioner deemed Child's home state to be California and recommended that the Utah court dismiss Bradshaw's petition for lack of jurisdiction. Bradshaw objected to the commissioner's recommendation as authorized by rule 108(a) of the Utah Rules of Civil Procedure.

¶4     After the commissioner recommended that the district court deny her parentage petition, Bradshaw, in a separate case, filed a petition for a protective order against Pelley-Whelan, alleging two incidents of abuse which had taken place several months earlier in Massachusetts and two weeks earlier in California. On June 13, 2018, a commissioner recommended that Bradshaw's petition for a protective order be denied. Bradshaw objected to the recommendation and requested that the objections to the parentage petition and the protective order be consolidated.

¶5     On June 20, 2018, the parties presented oral argument on jurisdiction and the protective order. Bradshaw primarily argued the district court should exercise jurisdiction under the UCCJEA because Utah, not California, was Child's home state. In the alternative, Bradshaw argued that Child had no home state. Finally, she argued the court should exercise emergency jurisdiction under the UCCJEA because the allegations of abuse in the protective order illustrated a risk of danger for Child. Pelley-Whelan argued that Child's home state was California because Child was born in California and had lived there ever since. The court set an evidentiary hearing to determine Child's home state for the six-month period leading up to the time Bradshaw filed her parentage petition in Utah—April 9 through October 9, 2017.

---

(…continued)
our review to note only that the California court did not decline jurisdiction.

¶6 At the evidentiary hearing, Bradshaw offered the following evidence in support of her petition: (1) documents showing that Bradshaw purchased a home in Utah in January 2016, and paid $1,000 in expenses to move personal possessions from Pelley-Whelan and Bradshaw's home in Huntington Beach, California; (2) tax documents showing that Bradshaw filed state income tax returns in Utah for the years 2016 and 2017; (3) credentials showing that Bradshaw maintained a Utah driver license and voter registration certificate; (4) a table showing Bradshaw's credit card transactions in Utah; (5) a table showing Bradshaw's flights to Utah; and (6) pictures showing Child and Child's belongings in Utah or at Bradshaw's Utah house.

¶7 Pelley-Whelan offered rebuttal evidence in support of his position that Child's home state for the relevant period was California. Specifically, Pelley-Whelan offered evidence that (1) Child was born in California and remained there for at least six to eight weeks; (2) Child's doctor is in California; (3) Child was enrolled in ballet class in California; (4) although Bradshaw had purchased a home in Utah, she continued to own and live in the Huntington Beach, California home, which Pelley-Whelan had spent $90,000 renovating in anticipation of Child's birth; (5) Bradshaw and Pelley-Whelan jointly owned a second property in Big Bear, California; (6) Bradshaw's phone records indicate that she was in Utah for only fifty-five days during the entire 2017 year; and (7) the majority of Child's belongings remained in California.

¶8 Bradshaw also raised the protective order at the evidentiary hearing, but only to point out that it was "relevant in terms of whether Utah should invoke jurisdiction" over the custody dispute. While the court did allow some testimony on the protective order—such as the location of the alleged instances of abuse—it limited many questions and indeed barred one of Bradshaw's witnesses from discussing specific details of the alleged abuse that occurred in Massachusetts. At the close of the evidentiary hearing, the district court asked the parties to

submit additional briefing on both the jurisdictional issue and the protective order.

¶9    The district court entered a written order denying Bradshaw's objections on November 15, 2018. Therein, the court made the following findings: (1) in light of the fact that Bradshaw maintained two homes in California, and the fact that she purchased a home in Utah and spent $1,000 to move personal possessions from California to Utah, did not indicate that she intended to, or did, relocate to Utah; (2) although Bradshaw offered evidence that she periodically worked from her Utah home, that evidence was incomplete as to when or how often she actually did; (3) competing evidence demonstrated that the majority of Child's belongings are in California; (4) evidence that Pelley-Whelan spent $90,000 to remodel the Huntington Beach house in anticipation of Child and Bradshaw residing in California was credible; (5) Bradshaw's tax return evidence did not demonstrate that she had relocated to Utah because although Bradshaw filed Utah income tax returns for the years 2016 and 2017, both of those returns were prepared by a California accountant, the 2016 return showed that Bradshaw received a credit because she claimed to be a resident of another state, and Bradshaw used her California driver license when she filed the 2017 return; (6) Bradshaw's Utah driver license and voter registration credentials were issued after October 9, 2017, and therefore did not show that Bradshaw had relocated to Utah during the relevant time period; (7) Bradshaw redacted and/or omitted large sections of her flight history and credit card information, and therefore this evidence was not credible to show that Bradshaw had relocated to Utah; and (8) Pelley-Whelan's phone record analysis was credible and showed that Bradshaw was in Utah for only fifty-five days in all of 2017, and thus was not in Utah for the majority of the relevant six-month period.

¶10    The district court found that "[Bradshaw] has presented insufficient evidence to establish that either California is no

longer [Child's] home state or that Utah is now [Child's] home state." Citing *Garba v. Ndiaye*, 132 A.3d 908 (Md. Ct. Spec. App. 2016), the court also concluded that Child was only ever temporarily absent from California and that California was therefore Child's home state for the relevant six-month period. Thus, the court concluded that it lacked jurisdiction under the UCCJEA and dismissed Bradshaw's parentage petition. The court also denied Bradshaw's petition for a protective order, stating that "the evidence does not support the entry of a protective order."

¶11    Bradshaw appeals.[3]

## ISSUE AND STANDARD OF REVIEW

¶12    Bradshaw contends that the district court erred in concluding that Child's home state was California and in turn concluding that it lacked subject matter jurisdiction under the UCCJEA. "Both jurisdictional questions and questions of statutory interpretation are questions of law that we review for correctness," *Meyeres v. Meyeres*, 2008 UT App 364, ¶ 3, 196 P.3d 604 (cleaned up), "though we will review the [district] court's underlying findings of fact using the clearly erroneous standard," *In re W.A.*, 2002 UT 127, ¶ 8, 63 P.3d 607 (cleaned up).[4]

---

3. Bradshaw does not appeal the denial of her petition for a protective order.

4. Bradshaw also argues that the court erred in declining to exercise emergency jurisdiction under the UCCJEA. The UCCJEA states, "A court of this state has temporary emergency jurisdiction if the child is present in this state and . . . it is necessary in an emergency to protect the child because . . . [a]

(continued…)

ANALYSIS

¶13   Bradshaw challenges the district court's conclusion that Child's home state is California and that any time Child spent outside of California was only a "temporary absence." The UCCJEA provides: "Except as otherwise provided in Section 78B-13-204, a court of this state has jurisdiction to make an initial child custody determination only if: (a) this state is the home state of the child on the date of the commencement of the proceeding . . . ." Utah Code Ann. § 78B-13-201(1) (LexisNexis 2018). The UCCJEA defines "home state" as

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the

---

(…continued)

parent of the child, is subjected to or threatened with mistreatment or abuse." Utah Code Ann. § 78B-13-204(1) (LexisNexis 2018). Under the plain language of the statute, Child must have been present in Utah for emergency jurisdiction to obtain. *Id.* But Bradshaw did not demonstrate that Child was in Utah when the petition was filed or that there was an emergency requiring invocation of the court's jurisdiction to protect Child. Therefore, a Utah court could not exercise emergency jurisdiction.

Bradshaw also argues that Pelley-Whelan consented to the court exercising personal jurisdiction over him by using the district court's subpoena power during the proceedings. But even if this were true, Bradshaw has not demonstrated that the district court had subject matter jurisdiction under the UCCJEA to make an initial custody determination. Accordingly, we decline to address this argument further.

term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id.* § 78B-13-102(7).

¶14 Here, the district court correctly concluded that Child's home state is California under the UCCJEA. First, the court correctly found—and Bradshaw does not challenge—that "[Child's] home state was California for the two months following her birth." *See Nevares v. Adoptive Couple*, 2016 UT 39, ¶ 16, 384 P.3d 213 (explaining that Utah was arguably the child's home state for the first eight days of his life under the UCCJEA when he was born in Utah and remained for eight days before moving out of state). Although this conclusion is not determinative of the issue before us, it is helpful to give context in this case.

¶15 Second, the court made a factual finding that "[Bradshaw] has presented insufficient evidence to establish that either California is no longer [Child's] home state or that Utah is now [Child's] home state." In fact, the majority of the district court's written order is dedicated to explaining why it found Bradshaw's evidence to be unpersuasive, incomplete, irrelevant, or lacking credibility. *See supra* ¶ 9. Accordingly, the court adopted findings of fact consistent with Pelley-Whelan's evidence that Child lived in California for six consecutive months leading up to the time Bradshaw filed her parentage petition in Utah. Although Bradshaw dedicates the majority of her brief to reciting the evidence and making arguments criticizing how the court weighed the evidence in this case,[5] she

---

5. For example, Bradshaw argues, "In focusing primarily on the evidence regarding the amount of time that [Bradshaw] could prove that she was living in Utah, the Court failed to weigh the

(continued…)

adamantly maintains that she is not challenging the court's factual findings.[6]

¶16     Third, the court correctly determined that any time Child allegedly spent away from California during the relevant six-month period was only a temporary absence. *See* Utah Code Ann. § 78B-13-102(7) (stating that temporary absences are credited toward the consecutive six-month period required for a home state determination). The court first made two crucial factual findings—which Bradshaw does not challenge—(1) "[Bradshaw] spent only 55 days in Utah in 2017" and thus she "spent the majority of her time during the relevant period in California," and (2) "[Bradshaw's] decision to purchase a home in Utah does not establish [her] intent to relocate [from California to Utah]."

¶17     Citing *Garba v. Ndiaye*, 132 A.3d 908 (Md. Ct. Spec. App. 2016), the district court next applied a totality of the circumstances approach to determine that any time that Child

---

(…continued)
fact that [Bradshaw] testified that she didn't use her credit card every day that she was in Utah." She also argues, "The Court failed to consider and weigh the testimony of [Bradshaw's] two corroborating witnesses . . . who testified that they saw [Bradshaw] in Utah for much larger periods of time than [Bradshaw's] personal phone records and [Bradshaw's] bank account statements showed."

6. Bradshaw confirmed at oral argument that she is not challenging *any* factual findings. Where Bradshaw has expressly declined to challenge the court's factual findings, and where these unchallenged findings could lead only to a conclusion that Child's home state never ceased to be California, we are hard-pressed to see how a conclusion that Child's home state is anyplace but California could follow.

was allegedly away from California counted only as a temporary absence. *Id.* at 914 (adopting and applying a totality of the circumstances test, which is "an analysis that encompasses these considerations: the duration of the absence and whether the parties intended the absence to be permanent or temporary, as well as additional circumstances that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise" (cleaned up)).[7] In *Garba*, a Maryland court concluded that when a child spent four out of six of the relevant months in Maryland, *id.* at 913, and the mother failed to evidence her intent to permanently relocate out of Maryland, *id.* at 915, the child's absences from Maryland were only temporary, *id.* at 915–16.

¶18    Applying this sound approach to its factual findings—that Bradshaw had not evidenced her intent to relocate from California to Utah and that she and Child indeed spent the majority of their time in California—the district court correctly determined that any time Child spent outside of California was only a temporary absence. Therefore, the district court properly concluded that California was Child's home state for purposes of

---

7. Utah's version of the UCCJEA does not define temporary absence for purposes of a home-state analysis, but at least three different tests have been used in other jurisdictions to determine whether absences from a home state are temporary or permanent: "duration, intent, and totality of the circumstances." *Garba v. Ndiaye*, 132 A.3d 908, 914 (Md. Ct. Spec. App. 2016); *see also* Andrea Charlow, *There's No Place Like Home: Temporary Absences in the UCCJEA Home State*, 28 J. Am. Acad. Matrim. Law. 25, 30–37 (2015) (summarizing the "duration," "intent," and "totality of the circumstances" tests). We conclude not only that the totality of the circumstances test was appropriate in this case, but that it was properly applied by the district court.

the UCCJEA. As a result, the court lacked subject matter jurisdiction and properly dismissed the parentage petition.

CONCLUSION

¶19 Bradshaw does not challenge the district court's findings flowing from these stubborn facts. Bradshaw failed to present evidence sufficient to demonstrate that California ceased to be Child's home State. And she has failed to demonstrate that the court's ultimate conclusion—that it lacked jurisdiction under the UCCJEA—was in error. Therefore, we affirm.

————