## THE UTAH COURT OF APPEALS

SHAYNE KELLY,
Appellee,
*v.*
IRIS JOHNSON,
Appellant.

Opinion
No. 20240857
Filed November 28, 2025

Second District Court, Farmington Department
The Honorable David M. Connors
The Honorable Jennifer L. Valencia
No. 164701157

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant

Julie J. Nelson, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

OLIVER, Judge:

¶1　Shayne Kelly and Iris Johnson have two children together but never married. Following the end of their relationship, the district court issued a decree of custody and support (the Decree) granting the parties joint physical and legal custody of the children. Johnson sought to relocate with the children to California and filed a petition to modify the Decree (the Petition). Kelly filed a counterpetition to modify the Decree (the Counterpetition). After a bench trial, the district court awarded Kelly sole physical custody of the children, along with sole legal custody as to extracurricular activities. Johnson then filed a

motion for additional or amended findings of fact, a new trial, or an amended judgment (the Post-trial Motion). The district court made additional findings but otherwise denied the Post-trial Motion. Johnson now appeals. We affirm.

## BACKGROUND[1]

### *The Initial Proceedings*

¶2 Kelly and Johnson had a relationship from which two children were born. The parties separated in July 2016. A bench trial was held in 2018 addressing child support and custody issues, including Johnson's proposed unilateral relocation with the children to California. Following the bench trial, the district court awarded the parties joint physical and legal custody of the children, with a 3/4 parent-time split in favor of Johnson. The court found a unilateral relocation by Johnson was not "necessary or in the best interest of the children." The court acknowledged it could not prevent Johnson from relocating to California but noted if she went forward with her relocation, it "may then order a change in custody of the children" under Utah Code section 81-9-209 (the Relocation Statute).[2] The court then entered the Decree in accordance with its findings.

---

1. The custody proceedings between Kelly and Johnson have been both contentious and lengthy, with the parties needing to engage a special master to resolve disputes. In the words of the district court, "the level of litigation here is unbelievable." Thus, we include only those facts necessary to decide the issues on appeal.

2. The district court applied Utah Code section 30-3-37, which has since been renumbered as Utah Code section 81-9-209. As there have been no material changes to the relevant language of the statute, we cite the current version for convenience.

*The Petition and the Counterpetition*

¶3     In December 2019, Johnson filed the Petition, expressing her intent to relocate from Utah to San Diego, California, "within the next 60 days." Johnson worked as a flight attendant and stated her airline "would welcome" her "changing flight hubs from Salt Lake City to San Diego."

¶4     Kelly opposed the Petition and filed the Counterpetition. He asserted the "issue of [Johnson's] proposed unilateral relocation to California was front and center at trial," and because the district court correctly found that if Johnson relocated, it may now consider a change in custody pursuant to the Relocation Statute. Kelly further alleged that Johnson had already relocated to California and therefore, it would be in the children's best interest to grant Kelly full custody.

*The Trial*

¶5     A three-day bench trial was held in December 2023 and January 2024 addressing Johnson's relocation and custody. As the trial was about to start, Johnson moved to dismiss both the Petition and the Counterpetition. She argued that because she had decided not to relocate, neither the Petition nor the Counterpetition "ha[d] a basis to show a change in circumstances" as required by Utah Code section 81-9-208 (the Modification Statute). In response, Kelly argued that this was the first time he heard Johnson was "not planning on moving forward with her relocation" and asserted Johnson had already relocated, as alleged in the Counterpetition. The district court noted that it too "was surprised" at Johnson's change in position. It dismissed the Petition but allowed Kelly to proceed with the Counterpetition.

¶6     At trial, Kelly called three witnesses: himself, Johnson, and the parties' custody evaluator (Custody Evaluator). Kelly testified

that although Johnson had not formally notified him she had relocated, he believed Johnson lived in San Diego. He testified Johnson traveled frequently to California with the children and provided Kelly with the same San Diego address on the travel notifications she sent him each time she traveled with them. Kelly testified he was concerned the children had been traveling excessively due to Johnson's relocation.[3] Kelly further testified that Johnson opposed extracurriculars he suggested for the children in favor of the children spending time in California. For example, in one email exchange between the parties, Johnson asked Kelly, "[A]re you taking the [children's] best interests into consideration by requesting this specific soccer league (which only has games on Saturdays)? Are you considering the [children] when suggesting they do not go to San Diego for all of September and October?"

¶7    In her testimony, Johnson said she lived in Layton, Utah, in her parents' house and had lived there since she and Kelly separated. She testified she had a Utah driver's license, was registered to vote in Utah, and received mail in Utah. She acknowledged she had not considered the Layton house to be her primary address for the entirety of the litigation between the parties, but she testified she no longer lived in San Diego, and she last considered it home in 2021. She testified she purchased three houses in California: one she rents as an Airbnb; a second she previously stayed in with the children but now uses as a rental; and a third she purchased in 2022 prior to Custody Evaluator's visit to San Diego, but which she sold to a friend in 2023. Johnson testified she paid California state taxes on her rental properties.

---

3. Kelly testified the children traveled to San Diego eighteen times in 2022 and eleven times during an eight-month period in 2023. He introduced exhibits showing that one child had flown 101 times between December 2017 and June 2021 and the other had flown 107 times between July 2017 and June 2021.

She also testified she was in an online Master of Clinical Psychology program at a California university and planned to seek licensure in California upon graduation. She testified she decided not to relocate to California "when it was evident that the [custody] evaluation said that the relocation was not in the best interests of the [children]." When asked why she did not move to dismiss the Petition prior to the morning of trial, she stated, "Well, I wouldn't have filed anything . . . personally. I don't know."

¶8     Custody Evaluator testified that the court appointed him to perform a custody evaluation after Johnson requested one "to resolve the dispute over the [children's] relocation." He testified it was his understanding that "one of the main reasons for the custody evaluation from [Johnson's] perspective was her desire to move to California." He testified he visited her house in California in September 2022, where the children's rooms were full of toys, and it "looked like a home that was lived in." He testified one of the children told him they live in California with their mom. When asked whether it would surprise him that Johnson testified "she had not resided in California except for brief periods of staying down there," Custody Evaluator answered that it would. He further testified his recommendation was for Johnson not to relocate and for the parties to have a 50/50 week-on, week-off joint physical custody arrangement. When asked whether this recommendation would work if Johnson moved to California, Custody Evaluator replied, "It doesn't." He also testified the frequent travel between Utah and California was "a stressor to the kids" and "led to missed soccer games and other things of that nature that the kids talked about."

¶9     Following the testimony, Johnson orally moved to dismiss the Counterpetition on the grounds that Kelly did not demonstrate a change in circumstances. Johnson argued it was "undisputed" she did not relocate to California and the only travel was Johnson "traveling to her work and the kids going with her for summer trips and once a month, at most, to California."

She asserted the only change was that the children were now older, which is not a change in circumstance.

¶10   The district court denied Johnson's motion to dismiss. In doing so, the court explained it had concerns with Johnson's credibility. The court explained it considered the dismissal of the Petition "a tactic . . . intended to avoid what [Custody Evaluator] delved into," namely whether relocation was in the children's best interest. The court found there was "sufficient evidence" Johnson resided in California from at least 2019 through September 2023 and, at the time of trial, had no verifiable address. The court then found "a material and substantial change of circumstances" existed because Johnson "did effectively relocate" to California.

*The Order*

¶11   After taking the matter under advisement, the district court issued a lengthy written order granting the Counterpetition (the Order). The district court found Johnson's "testimony to be disingenuous" and "largely disregarded [it] because it lack[ed] candor, credibility, and trustworthiness." The district court found that though Johnson testified she decided not to relocate to San Diego and had not considered it home since 2021, "[a]ll pleadings and positions taken by [her] since December of 2019 st[ood] in direct conflict with her testimony." The district court found Johnson "not only indicated she intended to relocate, but she in fact did relocate to California within 60 days of the notice of such intent" and "continue[d] to primarily reside in California." The court found Johnson's parents' address was not Johnson's primary residence and Johnson was "perpetrat[ing] a fraud upon the [c]ourt by claiming she still live[d] in her parent[s'] home—despite all evidence to the contrary." The court further found Johnson's testimony "demonstrated a pattern of selectively hearing statements which might coincide with her position," resulting in her creating a narrative, which was "at times wildly

inconsistent with reality." By contrast, the court found Kelly's testimony "to be largely credible."

¶12   The court then applied the Relocation Statute. The district court found that Johnson chose to move to California despite the finding in the Decree that Johnson's relocation was not in the best interest of the children. The court then modified the existing joint custody order and granted Kelly full physical custody in accordance with the Relocation Statute.

¶13   The court next addressed Johnson's contention that "a material and substantial change of circumstances was required" to modify the Decree. The court stated it did not "perceive" such a finding was required by the Relocation Statute, but regardless, it found "that a material and substantial change of circumstances had occurred. Namely, that [Johnson] not only relocated herself to California subsequent to the Decree, but also ha[d] taken the children with her to California during much of her parent-time over the past four years."

¶14   The court also made additional best interest findings. It found that Johnson had

> demonstrated a continuous and repeated pattern under the existing joint custody order over the past four years of traveling by airplane to and from San Diego with the children multiple times per month during her parent-time. The pattern and extent of travel was not and is not in the best interest of the children. . . . [Johnson] will continue the pattern absent a change of custody.

The court further found "the time the children spend each month in airports, in travel to and from California, and in California during [Johnson's] parent-time, is excessive and not in their best interests," "the present pattern of parent-time . . . is 'wholly

unworkable,'" and "the children do not have time available for their own individual development." The court stated it could not "imagine how [the] children could be expected to develop as healthy, happy, and successful individuals under the existing circumstances." The court then awarded Johnson parent-time as the parties could agree—so long as Johnson exercised her time primarily in Utah—and limited the children's travel to one trip per month. If the parties were unable to agree, parent-time would be the statutory minimum under the Relocation Statute. The court also awarded Kelly sole legal custody as to extracurricular activities. The court then issued a modified decree in line with its findings (the Modified Decree).

*The Post-trial Motion*

¶15　Johnson then filed the Post-trial Motion, requesting the court make additional findings as to, among other things, her relocation to California, why the court "depart[ed]" from Custody Evaluator's recommendation of 50/50 joint custody, and why the court granted Kelly sole legal custody as to extracurriculars.

¶16　The district court denied the Post-trial Motion (the Post-trial Order), stating the Order "adequately addressed" Johnson's claimed deficiencies. Nevertheless, the court stated, "To the extent [Johnson] seeks confirmation from the [c]ourt that the parent-time schedule ordered pursuant to [the Order and the Modified Decree] is in the best interests of the minor children, the [c]ourt so finds." It found the Order "sufficiently address[ed] . . . whether altering the existing custody arrangement [was] in the best interests of the children."

¶17　But regarding extracurricular activities, the court entered multiple additional findings, including the following: Kelly's testimony on the issue was more credible than Johnson's; though parallel parenting can be useful "in general, it can result in a scenario where a single child is expected to be in two different

places and/or engage in two different activities at the same time," which "is untenable for any single child"; and it was in the children's best interest for Kelly "to have sole legal custody over extracurricular activities." The court further found that granting Kelly full legal custody in this realm would prevent Johnson from thwarting the children's "participation in soccer (as she ha[d] done in the past)."

ISSUES AND STANDARDS OF REVIEW

¶18 Johnson first argues the district court erred by applying the Relocation Statute rather than the Modification Statute. We review the "applicability of a particular . . . statute" for correctness. *Gullickson v. Gullickson*, 2013 UT App 83, ¶ 16, 301 P.3d 1011.

¶19 Johnson next argues the district court abused its discretion in its custody and parent-time decisions. "We review the district court's custody and parent-time determination for abuse of discretion," and "as long as the court exercises [its discretion] within the confines of the legal standards we have set, and the facts and reasons for the decision are set forth fully in appropriate findings and conclusions, we will not disturb the resulting award." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 17, 509 P.3d 806 (cleaned up).

ANALYSIS

I. The Relocation Statute

¶20 Johnson argues the district court erred when it applied the Relocation Statute rather than the Modification Statute. In her view, the Modification Statute applies here because the matter being decided at trial was the Counterpetition. And since she "withdrew her request to relocate with the children before trial"

and "conceded that there would be no relocation," the district court "was not operating under the procedure set forth" in the Relocation Statute and was required to follow the Modification Statute. As a result, Johnson argues, the district court failed to make the required factual findings that there was a change of circumstances and that awarding custody to Kelly was in the children's best interest. We disagree.

¶21   Johnson's argument overlooks two key points. First, the Counterpetition alleged that she had already relocated, so the issue of relocation was squarely before the district court even after she withdrew the Petition. Second, and more importantly, Johnson does not challenge the district court's finding that she had relocated to California. She generally points to evidence that she took the children to school and extracurricular activities in Utah, but "mere assertions . . . are insufficient to challenge a district court's factual findings on appeal, and we may accept unchallenged findings of fact as true." *Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 23, 310 P.3d 747 (cleaned up). Put simply, Johnson does not challenge the court's factual finding that she relocated to California. "Accordingly, [she] falls short of showing that the district court's legal conclusion" concerning application of the Relocation Statute was "erroneous as a matter of law." *Bradshaw v. Pelley-Whelan*, 2019 UT App 201, ¶ 1, 456 P.3d 765. Because the district court found that Johnson relocated, it correctly applied the Relocation Statute.

¶22   And under the Relocation Statute, no additional best interest findings are required. As this court explained in *Pingree v. Pingree*, 2015 UT App 302, 365 P.3d 713,

> [I]f a court determines that relocation is not in a child's best interest, it then has authority to order a change in custody if a custodial parent chooses to relocate. . . . Notably, the statute does not require a separate analysis of whether such a change in

custody would be in the child's best interest. Instead, such a conclusion is implicit in the initial best-interests analysis: if it is not in [the child's] best interest to relocate, it is in [his or] her best interest to remain where [he or] she currently lives. And if Mother opts to relocate, the only way for [the child] to remain in Utah is with a change in custody.

*Id.* ¶ 12. Here, the district court performed a best interest analysis in the Decree. It found Johnson's relocation to California was not "necessary or in the best interest of the children" and if Johnson relocated to California, the court "may then order a change in custody of the children" pursuant to the Relocation Statute. Thus, no additional best interest analysis was required before changing custody due to Johnson's relocation. *See id.*

¶23 Moreover, even if Johnson was correct that the Relocation Statute did not apply (thus necessitating findings on a change of circumstances) or that the Relocation Statute required an additional best interest analysis, she is simply wrong when she asserts that the district court failed to make such findings. Indeed, the court made factual findings on both a change of circumstances and the best interest of the children. First, the court "verbally found on the record . . . that a material and substantial change of circumstances had occurred." Second, the court "specifically" found that the travel time was "excessive and not in [the children's] best interests," and that Johnson would continue to engage in such excessive travel until there was a change of custody. The court also affirmed in the Post-trial Order that the parent-time schedule it ordered under the Relocation Statute was "in the best interests of the minor children."

¶24 In sum, because the district court's finding that Johnson relocated to California stands unchallenged, the district court correctly applied the Relocation Statute. No additional best

interest analysis is required under the Relocation Statute, and such analysis was conducted in any event.

## II. Physical and Legal Custody

¶25    Johnson next argues the district court abused its discretion in its decisions on physical custody and parent-time, as well as in its decision on legal custody over the extracurricular activities. We find neither argument persuasive.

### A.    Physical Custody and Parent-time

¶26    Johnson asserts the Order and the Post-trial Order did not "articulate some reason for rejecting" Custody Evaluator's recommendation of joint physical custody and equal parent-time. At trial, Custody Evaluator testified he recommended Johnson not relocate and if Johnson relocated to California, equal parent-time would not work. And the district court found Johnson relocated. Thus, the district court did not "reject" Custody Evaluator's recommendation for equal parent-time but rather determined it did not apply because Johnson had relocated. With Custody Evaluator's recommendation no longer an option, the court applied the Relocation Statute, granting Kelly full physical custody and Johnson parent-time as the parties could agree, or the statutory parent-time if they could not.

¶27    "To successfully challenge a district court's factual findings on appeal, the appellant must overcome the healthy dose of deference owed to factual findings by identifying and dealing with the supportive evidence and demonstrating the legal problem in that evidence . . . ." *Lobendahn v. Lobendahn*, 2023 UT App 137, ¶ 23, 540 P.3d 727 (cleaned up). But, as discussed *supra* ¶ 21, Johnson does not challenge the district court's finding that she relocated to California, nor does she acknowledge that Custody Evaluator's 50/50 custody recommendation was based on her living in Utah full time. Thus, it was well within the court's

discretion to change physical custody and award the Relocation Statute's minimum parent-time if the parties were unable to agree on an alternative schedule.[4]

B.      Legal Custody Over Extracurricular Activities

¶28      Johnson asserts the district court abused its discretion in awarding Kelly sole legal custody regarding the children's extracurricular activities. Specifically, she complains the district court's findings on this issue were "lacking" and "do not appear to have rational basis or logic."

¶29      Here, the district court specifically articulated the reasons for its legal custody award, finding it would be "untenable for any single child" to be "expected to be in two different places and/or engage in two different activities at the same time." It further found Kelly's testimony on this issue to be more credible than Johnson's and agreed with Kelly that granting him full legal custody in this realm would prevent Johnson from thwarting the children's participation in soccer, which she had done previously. Contrary to Johnson's assertion, this reasoning is both "rational" and "logical."

¶30      Essentially, Johnson is displeased her request for additional findings in the Post-trial Motion did not result in

---

4. Johnson further argues that even if the Relocation Statute applies, she should not have been awarded the statutory minimum parent-time because nothing in the Relocation Statute indicates Utah Code section 81-9-206, which provides guidelines for determining parent-time in a modification proceeding, does not apply. But the district court found Johnson relocated. Therefore, this was a relocation case, not a modification case, and the district court properly ordered parent-time "as the parties can agree" or according to the Relocation Statute.

findings in her favor. "The pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a 'fatal flaw'—with that evidence, the finding will stand, even though there is . . . record evidence that would have supported contrary findings." *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733. Here, sufficient evidence supports the district court's finding, including that Johnson's repeated travel to San Diego with the children prevented them from participating in extracurricular activities and Custody Evaluator's testimony that the children reported missing soccer games to be with Johnson in California. And to the extent the issue turns on the credibility of the witnesses, we must defer to the district court's finding that Kelly was more credible than Johnson. *See Meyer v. Aposhian*, 2016 UT App 47, ¶ 16, 369 P.3d 1284 ("Because the district court judge was uniquely equipped to make credibility determinations, we defer to the credibility findings of the district court . . . ." (cleaned up)).

¶31 The only contrary evidence Johnson points to is that the parties previously engaged a special master to assist with disputes involving extracurriculars, and she argues that they should still be able to do so. Johnson "clearly views th[is] evidence as compelling a different outcome, but it is not within our purview to engage in a reweighing of the evidence." *Lobendahn*, 2023 UT App 137, ¶ 24 (cleaned up). And Johnson "has not demonstrated that the evidence underlying the district court's findings" as to extracurricular activities is insufficient. *Id.* (cleaned up). Therefore, the district court did not abuse its discretion in awarding Kelly sole legal custody as to extracurricular activities.

CONCLUSION

The district court correctly applied the Relocation Statute and did not abuse its discretion in its custody and parent-time decisions. Accordingly, we affirm.