2019 UT App 103

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ADOPTION OF B.H.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

P.H. AND A.D.,
Appellees,
*v.*
C.S.,
Appellant.

Opinion
No. 20171038-CA
Filed June 13, 2019

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 162900039

Julie J. Nelson, Alexandra Mareschal, and Lisa
Lokken, Attorneys for Appellant

Jessica S. Couser and Benjamin K. Lusty, Attorneys
for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

MORTENSEN, Judge:

¶1    Although M.S. (Mother) and C.S. (Father) had been married since 2008, Mother claimed that a man other than Father (Purported Father) was the biological parent of B.H. (Child), who was born in Montana in early 2016. Within one week of Child's birth, Mother voluntarily relinquished her parental rights and Child was placed into the custody of P.H. and A.D (Adoptive Parents), who resided in Utah. Adoptive Parents filed a petition for adoption in the State of Utah. Father was served

notice of the adoption proceedings and he intervened in the action. After a bench trial, the district court terminated Father's parental rights and finalized the adoption. On appeal, Father argues that (1) the district court lacked subject matter jurisdiction to terminate his parental rights and (2) the district court erred in finalizing the adoption because the Interstate Compact on the Placement of Children (ICPC)[1] request form, filled out by Mother, was materially deficient in that it listed Purported Father, rather than Father, as the parent of Child. We conclude that the district court had jurisdiction, but set aside the adoption decree and remand for additional findings and conclusions on compliance with the ICPC.

## BACKGROUND

¶2 Child was born in Montana on January 30, 2016. Less than one week after Child's birth, Mother and Purported Father voluntarily relinquished their parental rights and consented to place Child for adoption with Adoptive Parents, who resided in Utah. Child was discharged from the hospital and placed into the custody of Adoptive Parents on February 5, 2016. Adoptive Parents remained in Montana until an ICPC request form 100A, listing Mother and Purported Father as Child's parents, was approved by all the required ICPC administrators on February 9,

---

1. The ICPC "is a uniform law that has been enacted by all fifty states, the District of Columbia, and the U.S. Virgin Islands." *Alternative Options & Services for Children v. Chapman*, 2004 UT App 488, ¶ 2, 106 P.3d 744. "The purpose of the ICPC is to promote cooperation among the states in the interstate placement of children to ensure that the best interests of children are met." *Id.* Utah's version of the ICPC is codified at Utah Code sections 62A-4a-701 to -711.

2016.[2] The record indicates that Adoptive Parents transported Child to Utah the next day, on February 10, 2016.

¶3    Adoptive Parents initiated adoption proceedings by filing a petition (Adoption Petition) on January 26, 2016. On February 10, 2016, Adoptive Parents filed a Motion for Temporary Custody of Child and indicated that they had "recently learned that [Mother] is still technically married to [Father]" and Adoptive Parents were "working on determining paternity and/or providing notice to address any legal interests [of Father]." The district court granted temporary custody of Child to Adoptive Parents the next day (Temporary Custody Order).

¶4    On February 22, 2016, Adoptive Parents sent notice of the adoption proceedings to Father. Father intervened two weeks later.

¶5    Meanwhile, Father filed for divorce from Mother in Montana on March 14, 2016. As part of the divorce, the Montana court ordered genetic testing of Father and Child, which determined that Father was Child's biological parent.

¶6    On June 29, 2016, Adoptive Parents petitioned the district court—in the adoption proceedings—to terminate Father's parental rights (Termination Petition). The district

---

2. The ICPC requires that an ICPC-100A "Interstate Compact Placement Request" form be approved by an ICPC administrator in both the sending state and receiving state before a prospective adoptive child may be transported across state lines. *See* American Public Human Services Association, *ICPC Regulations*, https://aphsa.org/AAICPC/AAICPC/ICPC_Regulations.aspx [https://perma.cc/LZ24-GRSF].

court held a bench trial on the Termination Petition on July 31, 2017. After the trial, but before ruling on Father's parental rights, the district court ordered the parties to file a memorandum addressing whether the court had jurisdiction to terminate Father's parental rights. The district court concluded that it had jurisdiction under Utah Code section 78B-6-105, terminated Father's parental rights, and finalized the adoption.

¶7     Father appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Father raises two issues. First, he contends that the district court erred in concluding that it had jurisdiction to terminate his parental rights. Issues concerning jurisdiction are reviewed for correctness and we grant no deference to the district court's conclusion. *State v. Wynn*, 2017 UT App 211, ¶ 11, 407 P.3d 1113; *see also State v. Nicholls*, 2006 UT 76, ¶ 3, 148 P.3d 990; *In re A.J.B.*, 2017 UT App 237, ¶ 12, 414 P.3d 552.

¶9     Second, Father contends that the district court erred in finalizing the adoption, because the ICPC was not complied with. "'The proper interpretation and application of a statute is a question of law which we review for correctness . . . .'" *In re P.F.B.*, 2008 UT App 271, ¶ 10, 191 P.3d 49 (omission in original) (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).

ANALYSIS

I. Jurisdiction

¶10    Father contends that the district court erred in terminating his parental rights, because the court lacked jurisdiction under the Utah Uniform Child Custody Jurisdiction

and Enforcement Act (UCCJEA).[3] Father also contends that the court lacked jurisdiction under the Utah Adoption Act, *see generally* Utah Code Ann. §§ 78B-6-101 to -146 (LexisNexis 2018),[4] because, under these facts, jurisdiction under the UCCJEA must be established as a prerequisite to jurisdiction under the Adoption Act. We review jurisdictional requirements under the Adoption Act and UCCJEA in turn.

A.     Adoption Act

¶11    The Adoption Act confers jurisdiction over adoption proceedings "in the district where the prospective adoptive parent resides." Utah Code Ann. § 78B-6-105(1)(a) (LexisNexis 2018). Thus, as an initial matter, where Adoptive Parents reside in Utah and the Adoption Petition was filed in Utah, the district court below properly exercised jurisdiction under the Adoption Act. But Father argues that the district court lacked jurisdiction to terminate his parental rights under the Adoption Act "because the termination proceeding is not itself the adoption proceeding." This argument is unavailing for two reasons.

¶12    First, the Adoption Act expressly confers subject matter jurisdiction to terminate parental rights for the purpose of facilitating an adoption. *Id.* § 78B-6-112(1). Section 78B-6-112 also expressly states that a petition to terminate parental rights may be "(a) joined with a proceeding on an adoption petition; or (b) filed as a separate proceeding before or after a petition to

---

3. The UCCJEA is codified at Utah Code sections 78B-13-101 to -318.

4. Because the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect, unless otherwise indicated, we cite the current version of the Utah Code.

adopt the child is filed." *Id.* § 78B-6-112(2). Here, Adoptive Parents initiated the adoption proceedings by filing the Adoption Petition in January 2016. And in June 2016, Adoptive Parents filed the Termination Petition in the same adoption proceedings. Because the Adoption Act expressly provides for jurisdiction over a petition to terminate parental rights when that petition is filed within an adoption proceeding, and because that procedure was followed here, we conclude that the district court had jurisdiction over both the Adoption Petition and the Termination Petition.

¶13   Father cites the dissenting opinion in *Osborne v. Adoption Center of Choice*, 2003 UT 15, 70 P.3d 58, to support his argument that the termination proceeding was separate from the adoption proceedings. *See id.* ¶ 53 (Durham, J., dissenting) ("[A determination of parental rights] is not an adoption proceeding, but a separate proceeding that precedes an adoption proceeding." (cleaned up)). This argument falls short for two reasons. First, despite the dissent's position in *Osborne*, the majority held that the district court did not exceed its jurisdiction by making a parental-rights determination within the adoption proceedings. *Id.* ¶¶ 12–13, 29 (majority opinion). Second, the relevant portion of the Utah Code in effect at the time *Osborne* was decided provided that a petition for determination of parental rights may be filed "'at any time *prior to* the filing of a petition for adoption.'" *Id.* ¶ 45 (Durham, J., dissenting) (emphasis added) (quoting Utah Code Ann. § 78-30-4.24 (2002)). However, this provision was amended after *Osborne* and permits a determination of parental rights to be requested by petition any time prior to the "*finalization* of an adoption," *id.* § 78B-6-109(1)(a)–(b) (LexisNexis 2018) (emphasis added), or by motion within an adoption proceeding, *id.* § 78B-6-109(2). Accordingly, because precedent and the applicable Utah statute allow for a determination of parental rights within an adoption

proceeding, we conclude that Father's argument is without merit.

¶14 Second, the district court in this case had jurisdiction to terminate Father's parental rights, despite the fact that he resides in Montana, because Father received notice of the adoption proceedings and intervened. The Adoption Act provides that "the fact of the minor's presence within the state shall confer jurisdiction . . . , provided that due notice has been given in accordance with the Utah Rules of Civil Procedure." *Id.* § 78B-6-105(4)(a); *cf. Beltran v. Allan*, 926 P.2d 892, 898 (Utah Ct. App. 1996) (holding that an out-of-state father was subject to Utah's statutory scheme and therefore required to file notice of paternity because he was on notice that the mother was in Utah to place their child for adoption). Here, Father received notice of the adoption proceedings on February 22, 2016. Specifically, he was served notice that (1) adoption proceedings had been filed in Utah, (2) he could intervene in the adoption proceedings, and (3) his failure to intervene would result in a waiver and forfeiture of all rights in relation to Child. This notice was sufficient to confer jurisdiction to the district court under section 78B-6-105(4)(a) of the Adoption Act.

¶15 The exercise of jurisdiction over a non-resident is not unique to this case. Our supreme court in *In re adoption of B.B.D.*, 1999 UT 70, 984 P.2d 967, held that when a non-resident father intervened in adoption proceedings, he "voluntarily invoked and submitted to the jurisdiction of Utah, its laws, and its court system." *Id.* ¶ 29. This holding illustrates that when an out-of-state father intervenes in adoption proceedings, he has not only waived personal jurisdiction but also submitted to Utah's laws. *Id.* ¶¶ 30–33; *see also Beltran*, 926 P.2d at 898 (holding that an out-of-state father was subject to Utah's statutory scheme upon receiving notice). Accordingly, Father's intervention in the adoption proceedings invoked the jurisdiction of the district

court, including jurisdiction to terminate Father's parental rights as part of the overall adoption proceedings.

B.     UCCJEA

¶16     Father argues that "Utah cannot terminate a parent's rights in the context of an adoption without that court having acquired jurisdiction to do so under the UCCJEA." In other words, Father contends that, under these facts, jurisdiction under the UCCJEA is a prerequisite to jurisdiction under the Adoption Act. We disagree.

¶17     Father first relies on section 78B-13-201 of the UCCJEA, which provides that the UCCJEA is the "exclusive jurisdictional basis for making a child custody determination." Utah Code Ann. § 78B-13-201(2) (LexisNexis 2018). The UCCJEA also expressly provides, however, that "[t]his chapter does not govern . . . an adoption proceeding." *Id.* § 78B-13-103(2). And the UCCJEA defines "adoption proceeding" broadly: "For purposes of this section, 'adoption proceeding' means any proceeding under Title 78B, Chapter 6, Part 1, Utah Adoption Act." *Id.* § 78B-13-102(1). Thus, where the plain language of the UCCJEA unambiguously excludes the UCCJEA from adoption proceedings, Father's argument misses the mark.

¶18     Father next contends that the Adoption Act acknowledges that jurisdiction must be established under the UCCJEA in order to terminate an out-of-state parent's rights. Father raises the point that the Adoption Act requires courts to make a finding that an adoption complies with the ICPC. *See id.* § 78B-6-107(1). Father then argues that compliance with the ICPC necessarily requires "that the jurisdiction requirements of the UCCJEA be satisfied." We are not persuaded.

¶19     First, the Adoption Act requires only that an adoption comply with the ICPC, not the ICPC *and* the UCCJEA. Given the

legislature's expressed directive that the UCCJEA does not govern adoption proceedings, the UCCJEA and ICPC are distinct and separate titles under the Utah Code, and the ICPC does not expressly reference the UCCJEA, we are hard-pressed to conclude that the legislature intended compliance with the ICPC to mean compliance with the ICPC and the UCCJEA. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 ("The best evidence of the legislature's intent is the plain language of the statute itself." (cleaned up)).

¶20 Second, that the ICPC overlaps with the Adoption Act in some respects and with the UCCJEA in others does not create overlap between the Adoption Act and the UCCJEA—especially given the clear legislative directive that the UCCJEA does not govern adoption proceedings. The ICPC defines placement as "the arrangement for the care of a child in a family free, adoptive, or boarding home, or in a child-caring agency or institution." Utah Code Ann. § 62A-4a-701 art. II(4) (LexisNexis 2018). In other words, adoptions are only one of several "arrangement[s] for the care of a child" contemplated and governed by the ICPC. Accordingly, even if the jurisdictional requirements of the UCCJEA must be met under some scenarios also governed by the ICPC, it does not follow that a party must comply with the UCCJEA to satisfy the ICPC in every instance.

¶21 Father contends that *Nevares v. Adoptive Couple*, 2016 UT 39, 384 P.3d 213, illustrates that jurisdiction under the UCCJEA must be established prior to jurisdiction under the Adoption Act. In *Nevares*, our supreme court grappled with jurisdiction under the UCCJEA when a father filed a paternity action in Utah, *id.* ¶ 2, despite the fact that the child and the adoptive parents resided in Illinois at the time the action was filed, *id.* ¶ 7. Ultimately, the court held that Utah did not have UCCJEA jurisdiction over the father's paternity action because (1) Utah ceased to be the child's home state when he moved to Illinois, *id.* ¶¶ 16–17, and (2) although Illinois was not the child's home state

(because he had not resided there for more than six months prior to the father's paternity action), jurisdiction in Illinois was proper because the child had "a significant connection with Illinois" vis-à-vis his physical presence in the state and the fact that the adoptive parents had resided in Illinois for more than five years, *id.* ¶ 21 (cleaned up).

¶22 The facts in *Nevares* are both instructive and distinguishable. *Nevares* is instructive because it illustrates that even if the UCCJEA applied in this case, Utah would have jurisdiction. Here, as in *Nevares*, Child has no "home state." Although Montana was Child's home state from January 30, 2016 (Child's date of birth), to February 10, 2016 (when Child moved to Utah), Montana ceased to be Child's home state when Child moved to Utah with Adoptive Parents. *See id.* ¶ 16 ("Utah ceased to be [the child's] home state once he moved to Illinois with [the adoptive parents]."). Further, when the Adoption Petition and Motion for Temporary Custody were filed in Utah, Child had not resided in Utah for more than six months; and therefore, Utah was not Child's home state. *See id.* However, also like the child in *Nevares*, Child in this case had significant ties to Utah sufficient to confer jurisdiction under the UCCJEA. Specifically, Child was present in Utah, and Adoptive Parents, who were acting as Child's parents, resided in Utah. Thus, *Nevares* demonstrates that jurisdiction would have been proper under the UCCJEA if it applied to this case.[5] *See id.* ¶ 21.

---

5. Even if analysis under the UCCJEA resulted in "concurrent jurisdiction" by virtue of Father's presence in Montana, Utah would nonetheless have priority jurisdiction because the Adoption Petition, Motion for Temporary Custody, and Temporary Custody Order were filed in Utah prior to Father's divorce action in Montana. *See Liska v. Liska*, 902 P.2d 644, 647–48 (Utah Ct. App. 1995) (holding that Utah had primary jurisdiction

(continued…)

¶23 *Nevares* is also distinguishable and demonstrates that the UCCJEA is not applicable in this case. The UCCJEA governed jurisdiction in *Nevares* because the father filed the paternity action in Utah prior to the time the adoptive parents filed the petition for adoption in Illinois. *Id.* ¶ 7. Thus, the provision in Utah's UCCJEA providing that the UCCJEA does not apply to adoption proceedings was not triggered, and therefore, *Nevares* is distinguishable from this case because it concerned a paternity action, not an adoption.

¶24 Simply put, we disagree with Father's contention that the legislature's directive that the UCCJEA does not govern adoption proceedings should be interpreted to mean that the UCCJEA operates to, in effect, govern adoption proceedings. Instead, we conclude that the district court had jurisdiction to terminate Father's parental rights and finalize the adoption decree under the Adoption Act.[6]

---

(…continued)

under the UCCJEA because a divorce decree, which determined child custody, originated in Utah prior to the action filed in Colorado).

6. Father also contends that the district court should have declined jurisdiction because Mother engaged in unjustifiable conduct by listing Purported Father on the ICPC request form. *See* Utah Code Ann. § 78B-13-208(1) (LexisNexis 2018) ("[I]f a court of this state has jurisdiction under this chapter because a person invoking the jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction . . . ."). But because this provision falls under the UCCJEA, we conclude that it does not apply to jurisdiction conferred by the Adoption Act.

## II. Compliance with the ICPC

¶25    Next, Father contends that the district court erred in finalizing the adoption because the ICPC was not complied with as the result of Mother listing Purported Father on the ICPC request form rather than Father. The ICPC "is a uniform law that has been enacted by all fifty states, the District of Columbia, and the U.S. Virgin Islands." *Alternative Options & Services for Children v. Chapman*, 2004 UT App 488, ¶ 2, 106 P.3d 744. The ICPC requires that "[p]rior to sending, bringing, or causing any child to be sent or brought into a receiving state . . . the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state." Utah Code Ann. § 62A-4a-701 art. III(2) (LexisNexis 2018) (listing information that the sending state is required to provide to the receiving state). Compliance with the ICPC can be evidenced by approval of a uniform ICPC-100A request form. *See* American Public Human Services Association, *ICPC Regulations*, Regulation No. 2, (8)(d), https://aphsa.org/AAICPC/AAICPC/ICPC_Regulations.aspx [https://perma.cc/LZ24-GRSF] ("The receiving state ICPC-100A approval expires six months from the date the 100A was signed by receiving state."). Further, the Adoption Act requires that "[i]n any adoption proceeding . . . the court's final decree of adoption shall state that the requirements of [the ICPC] have been complied with." Utah Code Ann. § 78B-6-107(1) (LexisNexis 2018).

¶26    As an initial matter, the district court did not state that the ICPC had been complied with. Its findings of fact and conclusions of law for adoption of Child state that the ICPC request form was filed with the court and "[t]he requirements of Title 78B, Chapter 6, Part 1, Utah Adoption Act, have been met." These findings, however, are silent as to compliance with the ICPC. Therefore, remand is necessary for further findings as to whether the ICPC was complied with.

¶27 Father cites *In re adoption of T.M.M.*, 608 P.2d 130 (Mont. 1980), a Montana case, to support his contention that non-compliance with the ICPC must result in vacatur of the adoption decree. *In re adoption of T.M.M.* is distinguishable from this case, however, because the Montana Supreme Court held that the adoptive parents failed to comply with the ICPC when they moved a child to Montana without ever notifying a Montana ICPC administrator. *Id.* at 134. Here, the ICPC request form was approved by Montana's ICPC administrator on February 8, 2016 and Utah's ICPC administrator on February 9, 2016—prior to Child moving to Utah with Adoptive Parents. Accordingly, where ICPC administrators were notified and indeed approved the ICPC request form before Child moved to Utah, the facts of *In re adoption of T.M.M.* simply do not support Father's position. Further, a finding of compliance with the ICPC may be supported by the record in this case.[7]

---

7. Compliance with the ICPC requires that written notice, containing specific information, be submitted to ICPC administrators, *see* Utah Code Ann. § 62A-4a-701 art. III(2) (LexisNexis 2018), not necessarily that all the specific information be set forth on the ICPC request form 100A. Adoptive Parents, in their brief, indicate that the complete ICPC packet submitted to Montana's ICPC administrator contained information not included on the ICPC request form, including a cover letter identifying Father as Mother's husband. Accordingly, on remand, it may be necessary to add the complete ICPC packet to the record in order to find that the ICPC was complied with in this case. And given that noncompliance with the ICPC would not divest the court of jurisdiction, in the event that the current record and complete ICPC packet still do not comply with the ICPC, Adoptive

(continued…)

¶28    We acknowledge that the ICPC form in this case was defective in that it listed Purported Father, rather than Father, as Child's parent. This defect does not, however, deprive Utah courts of jurisdiction. To be sure, under the ICPC, a party could be subject to criminal penalties for knowingly violating the ICPC, *see* Utah Code Ann. § 62A-4a-711 (LexisNexis 2018),[8] but such a violation does not amount to non-compliance with the ICPC sufficient to divest the district court of jurisdiction or unwind the adoption, *id.* § 62A-4a-701 art. IV ("[A]ny violation [of the ICPC] shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency . . . ."); *see also In re Adoption No. 10087*, 597 A.2d 456, 465 (Md. 1991) ("The fact that the ICPC had been violated in this case does not mandate dismissal; rather it indicates the need for a prompt determination of the best interest of this child.").

¶29    Furthermore, any alleged non-compliance with the ICPC did not deprive Father of his rights because he received notice of the adoption proceedings, intervened, and received a trial concerning the termination of his parental rights. If Father had not received notice of, and had not intervened in, the adoption proceedings, the court could have been divested of jurisdiction under the Adoption Act. *See* Utah Code Ann. § 78B-6-105(4)(a) (LexisNexis 2018). But that is not what happened here. Therefore, any alleged defects in the ICPC request form did not divest the court of jurisdiction. Nevertheless, because the district court did not state that the ICPC requirements were complied

---

(…continued)
Parents can still undertake steps to comply with the ICPC prior to reinstating the adoption decree.

8. Section 62A-4a-711 was not enacted until 2017 and therefore does not apply to Mother in this case.

with, we set aside the adoption decree and remand for further findings and conclusions on this issue.

CONCLUSION

¶30    The district court possessed subject matter jurisdiction to terminate Father's parental rights and potentially finalize the adoption of Child under the Adoption Act, and because the UCCJEA expressly states that it does not govern adoption proceedings, UCCJEA jurisdiction was not required. Finally, we set aside the adoption decree and remand for additional findings and conclusions on whether the requirements of the ICPC have been complied with.

———————