*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 64**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Adoption of B.H.,
a person under eighteen years of age

P.H. and A.D.,
*Respondents,*

*v.*

C.S.,
*Petitioner.*

No. 20190560
Heard April 10, 2020
Filed September 16, 2020

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Robert P. Faust
No. 162900039

Attorneys:

Jessica S. Couser, Holladay, Benjamin K. Lusty, Salt Lake City,
for respondents

Julie J. Nelson, Salt Lake City, Lisa B. Lokken,
Cottonwood Heights, for petitioner

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    This case involves an interstate adoption. At the time of the child's birth, the child's mother (Mother) was a Montana

resident and gave birth to the child there. Mother chose to place the child for adoption with two Utah residents, the Respondents (Adoptive Parents). Because the adoption involved an interstate placement of the child, Mother and Adoptive Parents were required to comply with the Interstate Compact on the Placement of Children (ICPC). UTAH CODE §§ 62a-4a-701 to -711.

¶2     Mother and Adoptive Parents followed the ICPC process. However, on a required ICPC request form, Mother did not list the Petitioner (Father) as the child's father, even though he was her husband at the time and therefore the child's legal father. Mother and Father had been separated for quite some time, and she believed he was not the child's biological father. On the request form, she listed as the child's father the man she believed to be the biological father.

¶3     Adoptive Parents filed an adoption petition in Utah district court. After taking temporary custody of the child in Montana, they returned with the child to Utah. They soon learned that Mother might still be married to Father, and they served him with notice of the adoption petition. Father successfully intervened in the proceeding and sought custody of the child. Adoptive Parents petitioned to terminate Father's parental rights within the adoption proceeding. In the meantime, a genetic test revealed that Father was not only the child's legal father, he was the child's biological father as well.

¶4     The district court held a bench trial and concluded that Father had abandoned the child and was an unfit parent. The court terminated his parental rights and then finalized the adoption. Father appealed.

¶5     Father argued in the court of appeals that the district court lacked jurisdiction over the termination proceeding under the Utah Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). UTAH CODE §§ 78B-13-101 to –318. Father also argued that Mother's failure to include him on the ICPC request form invalidated the adoption. The court of appeals rejected both arguments. But it set aside the adoption decree because it did not state that the requirements of the ICPC had been complied with, as required by the Adoption Act.[1] Accordingly, the court of

---

[1] The Adoption Act requires that, "the court's final decree of adoption shall state that the requirements of Title 62A, Chapter

(Continued . . .)

appeals remanded to the district court for the court to address this insufficiency.

¶6 We granted Father's petition for certiorari. We affirm.

**BACKGROUND[2]**

¶7 Mother and Father, both residents of Montana, were married in 2008. They eventually separated. Mother planned to file for divorce but had not yet done so when she learned she was pregnant. She was unsure who the biological father was, but she believed it was likely a man named D.G. She ultimately decided to place her child for adoption with Adoptive Parents, who are Utah residents. At the time of the adoption petition, Mother was legally married to Father.

¶8 Adoptive Parents filed a petition for adoption in Utah district court. The child was born in Montana four days later. Adoptive Parents traveled to Montana and were at the hospital within hours of the birth.

¶9 Because the adoption would involve placement of the child across state lines, the parties to the adoption were required to comply with the ICPC. Mother completed ICPC form 100A, titled Interstate Compact on the Placement of Children Request (request form). Notably, on the request form Mother identified D.G. as the child's father. Both Mother and D.G. voluntarily relinquished their parental rights.

¶10 Mother appointed Adoptive Parents as temporary guardians. Once the child was discharged from the hospital, Adoptive Parents took custody of the child. They stayed for a few days in a Montana hotel before returning to Utah with the child. They moved for temporary custody in the Utah district court in which they had filed the adoption petition. The court granted the motion, effective as of the child's date of birth.

¶11 Around this time, Adoptive Parents learned that Mother might still be married. They quickly sent notice of the adoption

---

4a, Part 7, Interstate Compact on Placement of Children, have been complied with." UTAH CODE § 78B-6-107(1)(a).

[2] "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings." *Utah State Tax Comm'n v. See's Candies, Inc.*, 2018 UT 57, ¶ 5 n.2, 435 P.3d 147 (citation omitted).

proceedings to Father. Father timely moved to intervene in the case. And the district court granted the motion.

¶12 While the adoption proceeding was pending in Utah, Father filed for divorce in Montana and listed the child "as a child of the marriage." The Montana court ordered genetic testing of Father and the child pursuant to Montana law. The genetic test revealed that Father was the child's biological father.

¶13 Adoptive Parents petitioned to terminate Father's parental rights within the Utah adoption proceeding, pursuant to Utah Code sections 78B-6-112[3] and -133 of the Utah Adoption Act (Adoption Act). The district court held a bench trial on the termination petition. But the court paused before issuing its ruling and asked the parties to brief whether the court had jurisdiction to terminate Father's parental rights in light of his Montana residency.[4]

¶14 Adoptive Parents argued that the district court had subject matter jurisdiction over the termination proceeding pursuant to the Adoption Act because the termination was "for the purpose of facilitating the adoption of the child." (Citing UTAH CODE § 78B-6-112(1)).

¶15 In response to the district court's briefing request, Father contested the court's subject matter jurisdiction for the first time. He asserted that jurisdiction was governed not by the Adoption Act but by the UCCJEA. And he argued that under the UCCJEA, Montana was the child's home state and should have jurisdiction over the termination proceeding. Father also asserted that because his name was not on the request form, the placement did not comply with the ICPC. According to Father, this was a jurisdictional defect.

¶16 The district court did not explicitly rule on the parties' briefing. But it ultimately exercised jurisdiction over the

---

[3] This provision has since been amended by 2020 Utah Laws Ch. 392 (S.B. 170). However, the changes to this section are not substantive, so we cite to the current version of the code.

[4] The parties briefed both subject matter and personal jurisdiction and some additional arguments that they do not raise on appeal. We describe only the arguments that are relevant to the issues before us.

termination proceeding. It ruled on the merits of the termination petition, finding that Father had abandoned the child and was an unfit parent due to his alcohol abuse, drug addiction, and extensive criminal history, among other things. The court then finalized the adoption.

¶17  In the adoption decree and the accompanying findings of fact and conclusions of law, the district court did not explicitly conclude that the requirements of the ICPC had been met, as required by the Adoption Act. *See id.* § 78B-6-107(1)(a). However, the district court did make some findings relevant to ICPC compliance, including that "[t]he pre-placement and post-placement adoptive evaluations have been filed with the Court, and they confirm that the adopting parents are fit to parent [the child]" and "Mother's Relinquishment and ICPC forms from Montana have been filed with the court." The court concluded that "[t]he requirements of [the Adoption Act] have been met."

¶18  Father appealed. He argued that "Utah cannot terminate a parent's rights in the context of an adoption without that court having acquired jurisdiction to do so under the UCCJEA." *In re Adoption of B.H.*, 2019 UT App 103, ¶ 16, 447 P.3d 110. As the court of appeals explained, "Father contends that, under these facts, jurisdiction under the UCCJEA is a prerequisite to jurisdiction under the Adoption Act." *Id.*

¶19  The court of appeals rejected this argument. It noted that the UCCJEA explicitly states that it does not govern adoption proceedings. *Id.* ¶ 17. And it concluded that the Adoption Act "expressly confers subject matter jurisdiction to terminate parental rights for the purpose of facilitating an adoption." *Id.* ¶ 12 (citing UTAH CODE § 78B-6-112(1)).

¶20 Father also asserted that the adoption was invalid because Mother failed to comply with the ICPC when she did not list him as the child's father on the request form. The court of appeals agreed that this was a material deficiency, but it concluded it was not a jurisdictional defect. *In re Adoption of B.H.*, 2019 UT App 103, ¶ 28. The court noted, however, that the Adoption Act requires that a final decree of adoption state that the ICPC "ha[s] been complied with." *Id.* ¶ 26. Because the district court failed to make such a conclusion, the court of appeals set aside the decree. *Id.* ¶ 30. It remanded to the district court for additional factfinding regarding ICPC compliance. *Id.* It also stated that, if necessary, Adoptive Parents could "still undertake

steps to comply with the ICPC prior to reinstating the adoption decree." *Id.* ¶ 27 n.7.

¶21 Father petitioned for certiorari, which we granted. We exercise jurisdiction under Utah Code section 78A-3-102(3)(a).

## ISSUES AND STANDARD OF REVIEW

¶22 The questions before us are: (1) whether the court of appeals erred in concluding compliance with the UCCJEA is not a prerequisite to a termination of parental rights within an adoption proceeding and in concluding the requirements of the UCCJEA would have been met in this case if it applied, and (2) whether the court of appeals erred in remanding for a determination of compliance with the ICPC.

¶23 "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

## ANALYSIS

¶24 Father argues that the court of appeals erred in concluding that the UCCJEA did not apply to the termination petition and the district court had subject matter jurisdiction based solely on the Adoption Act. We agree with the court of appeals that the UCCJEA does not govern jurisdiction over a termination petition brought under the Adoption Act.

¶25 Father also argues that the district court lacked subject matter jurisdiction because Mother failed to comply with the ICPC. Here as well, we agree with the court of appeals. The ICPC deficiency was not a jurisdictional defect. The ICPC does not purport to regulate jurisdiction among party states. And in the event of a violation of its terms, the remedy it provides is the potential for punishment of the alleged violator. It does not provide for the revocation of a child placement or the loss of jurisdiction in the receiving state.

¶26 We first address the applicability of the UCCJEA.

## I. UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT

¶27 Father argues that the UCCJEA governs jurisdiction over the termination proceeding and that it confers jurisdiction upon Montana, not Utah. As the court of appeals observed, the UCCJEA states clearly that it does not apply to proceedings under the Adoption Act. UTAH CODE § 78B-13-103(2)(a). The premise of Father's argument is that the termination of his parental rights is

separate from the adoption proceeding, and that it falls under the Termination of Parental Rights Act. *See id.* §§ 78A-6-501 to –515. Specifically, Father asserts "Utah cannot terminate an out-of-state parent's rights under the Termination of Parental Rights Act without the Utah court first having acquired jurisdiction to do so under the UCCJEA, even if the termination is in anticipation of an adoption."

¶28 When a child custody determination involves parties from more than one state, the UCCJEA "exists to '[a]void jurisdictional competition and conflict with courts of other States.'" *Nevares v. Adoptive Couple*, 2016 UT 39, ¶ 11, 384 P.3d 213 (alteration in original) (citation omitted). Specifically, "the UCCJEA promotes a framework wherein a single state is vested with jurisdiction to make child custody determinations." *Id.* And "a uniform set of rules . . . determine[s] which state is best positioned to adjudicate custody disputes." *Id.* Under the UCCJEA, a court can exercise jurisdiction over an "initial child custody determination" if it is determined to be the "home state"[5] of the child, or in other limited circumstances. UTAH CODE § 78B-13-201(1). Once a state has exercised jurisdiction under the UCCJEA, that state has "exclusive, continuing jurisdiction" until neither the child nor a parent resides in the state, or the child and parents no longer have significant connections to the state. *Id.* § 78B-13-202(1). Father argues that Montana is the child's home state under the UCCJEA, and therefore Utah lacks subject matter jurisdiction to terminate his parental rights.

¶29 Proceedings to terminate parental rights are considered "child custody proceedings" that are subject to the UCCJEA. *Id.*

---

[5] A "home state" is defined as:

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

UTAH CODE § 78B-13-102(7).

§ 78B-13-102(4) (defining "child custody proceeding" to include termination of parental rights). So the UCCJEA would apply to a termination petition filed under the Termination of Parental Rights Act.

¶30 However, the UCCJEA expressly does not govern "an adoption proceeding." *Id.* § 78B-13-103(2)(a). And it defines an adoption proceeding broadly as "any proceeding under Title 78B, Chapter 6, Part 1, Utah Adoption Act." *Id.* § 78B-13-103(1). Adoptive Parents filed the termination petition under sections 112 and 133 of the Adoption Act, which provide a mechanism for termination of a person's parental rights in connection with a contested adoption. *Id.* §§ 78B-6-112(1), (5), -133. The termination petition may either be "joined with a proceeding on an adoption petition," *id.* § 78B-6-112(2)(a), or filed as a separate petition before or after the adoption petition is filed, *id.* § 78B-6-112(2)(b). But as Father notes, the grounds for termination are those found in the Termination of Parental Rights Act. *See id.* § 78B-6-112(5)(e).

¶31 Accordingly, the question before us is whether a termination petition filed under the Adoption Act is a "proceeding under [the Adoption Act]," which is not governed by the UCCJEA, or a proceeding under the Termination of Parental Rights Act, which is governed by the UCCJEA. This is a matter of statutory interpretation. The point of statutory interpretation "is to ascertain the intent of the legislature." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation omitted). Because the best evidence of legislative intent is the statute's plain language, we begin there. *Id.*

¶32 Since we are assessing the interaction of two statutes, it is important to evaluate the statutory framework as a whole. We first examine the procedural and substantive features of a termination proceeding under the Termination of Parental Rights Act, and then make a comparison to a similar proceeding brought under subsections 112 and 133 of the Adoption Act.

*A. Termination under the Termination of Parental Rights Act*

¶33 Under the Termination of Parental Rights Act, "[a]ny interested party . . . may file a petition for termination of the parent-child relationship with regard to a child."[6] UTAH CODE

---

[6] However, if the petition to terminate parental rights is brought on behalf of the Division of Child and Family Services, it

(Continued . . .)

§ 78A-6-504(1). Such a petition must be brought in the juvenile court. *Id.* § 78A-6-103(2)(e) (providing that "[t]he juvenile court has original jurisdiction over any proceeding concerning ... the termination of the legal parent-child relationship in accordance with [the] ... Termination of Parental Rights Act, including termination of residual parental rights and duties").

¶34 After a petition has been filed, the petitioner must provide notice to "the parents, the guardian, the person or agency having legal custody of the child, and any person acting in loco parentis to the child." *Id.* § 78A-6-506(1)(a). The notice must indicate the "(i) nature of the petition; (ii) time and place of the hearing; (iii) right to counsel; and (iv) right to appointment of counsel for a party whom the court determines is indigent and at risk of losing the party's parental rights." *Id.* § 78A-6-506(1)(b). Importantly, a parent whose rights are subject to being terminated is automatically a party to the proceeding and no intervention is required. *See id.* § 78A-6-506.

¶35  If the juvenile court terminates a parent's rights in a child, the Termination of Parental Rights Act contemplates continued juvenile court involvement to find a permanent placement for the child.[7] Until that happens, the Act provides for review hearings at which the "agency or individual vested with custody of the child" reports on the "plan for permanent placement of the child" until the plan has been accomplished. *Id.* § 78A-6-512(2).

¶36 And although a termination "divests the child and the parents of all legal rights, powers, immunities, duties, and obligations with respect to each other," *id.* § 78A-6-513(1), a

---

must be brought by the attorney general. UTAH CODE § 78A-6-504(2).

[7] The court may "place the child in the legal custody and guardianship of a licensed child placement agency or the division for adoption" or "make any other disposition of the child authorized under Section 78A-6-117." *Id.* § 78A-6-511(2). And if a suitable adoptive placement is not available, the juvenile court must determine whether there is a relative who desires to adopt the child; may order a search to determine whether there are relatives who are willing to adopt the child; and if such a relative is located, make a finding as to whether the relative is fit to adopt the child, and place the child for adoption with the relative unless it is not in the child's best interest to do so. *Id.* § 78A-6-511(4).

termination under the Termination of Parental Rights Act does not completely foreclose reunification. A parent whose parental rights have been terminated may seek guardianship and reunification with the child under certain circumstances. *Id.* § 78A-6-511(6).

### B. Termination under the Adoption Act

¶37 Conceptually, the Adoption Act treats the termination of any pre-existing parental rights in the child as part of an adoption. The Act defines an "adoption" not only as the creation of the relationship between the child and the adoptive parents, but also as the termination of the legal relationship between the child and any other person. *Id.* § 78B-6-103(2) (defining adoption as "the judicial act that: (a) creates the relationship of parent and child where it did not previously exist; and (b) . . . terminates the parental rights of any other person with respect to the child").[8] In harmony with this definition of "adoption," the Adoption Act provides a mechanism not only for the creation of a new parent-child relationship, but also for the termination of any other person's rights in the child. In connection with the adoption of a child, a court has jurisdiction to terminate another person's rights in the child if the person voluntarily relinquishes their parental rights, fails to intervene in the proceeding, is an unmarried biological father who has failed to perfect his parental rights, or the court determines the person is not the child's parent. *Id.* § 78B-6-112(5)(a)–(d). And relevant here, if a person whose consent is required contests the adoption, the Act provides a mechanism for determining whether the person's rights should be terminated. *Id.* §§ 78B-6-112(5)(e), -133.

¶38 A termination proceeding brought under the Adoption Act is procedurally different than such a proceeding brought under the Termination of Parental Rights Act. Notably, the Adoption Act provides that "a petition filed under [section 112] is subject to the procedural requirements of this chapter." *Id.* § 78B-6-112(8).

---

[8] We note the definition includes two exceptions that apply to an adoption by a person who is married to one of the biological parents. As that is not the situation here, we do not address those exceptions.

¶39 First, jurisdiction varies between termination petitions brought under the two laws. As discussed, proceedings brought under the Termination of Parental Rights Act are within the juvenile court's exclusive jurisdiction. *Id.* § 78A-6-103(2)(e). But termination petitions brought in connection with a contested adoption may be handled in the district court. *Id.* § 78B-6-112(1). A district court has jurisdiction over a termination proceeding only if it is brought to facilitate the adoption of a child. *Id.*

¶40 Additionally, the manner in which a parent whose rights are subject to termination learns of and becomes a party to the termination proceeding varies based on whether the petition arises under the Adoption Act or the Termination of Parental Rights Act. As explained above, *supra* ¶ 34, when a petition is filed under the Termination of Parental Rights Act, the petitioner must give notice to a parent whose rights are subject to termination. And the parent is automatically a party to the proceeding. *Supra* ¶ 34.

¶41 But that is not the case when the termination arises under the Adoption Act. A person in Father's position, who is the presumed father of the child, must receive notice of the adoption petition. UTAH CODE § 78B-6-110(2)(a), (h). The required content of this notice differs from that required by the Termination of Parental Rights Act. *Compare id.* § 78B-6-110(5), *with id.* § 78A-6-506(1)(b). The Adoption Act requires that the notice contain specific information unique to an adoption proceeding, including: (1) the intervention requirements in subsection 110(6)(a);[9] (2) the consequences for failing to intervene listed in subsection 110(6)(b);[10] and (3) where a copy of the petition for adoption may be acquired. *Id.* § 78B-6-110(5)(c)–(d), (f).

---

[9] *Id.* § 78B-6-110(6)(a) ("A person who has been served with notice of an adoption proceeding and who wishes to contest the adoption shall file a motion to intervene in the adoption proceeding: (i) within 30 days after the day on which the person was served with notice of the adoption proceeding; (ii) setting forth specific relief sought; and (iii) accompanied by a memorandum specifying the factual and legal grounds upon which the motion is based.").

[10] *Id.* § 78B-6-110(6)(b) ("A person who fails to fully and strictly comply with all of the requirements described in Subsection (6)(a)

(Continued . . .)

¶42 Although a presumed father of a child must be notified of an adoption petition, he is not automatically a party to the adoption proceeding. He must move to intervene. *Id.* § 78B-6-110(6)(a). And "[a]n individual who files a motion to intervene in an adoption proceeding . . . is not a party to the adoption proceeding, unless the motion to intervene is granted." *Id.* § 78B-6-141(5)(a)(i). Unlike a proceeding under the Termination of Parental Rights Act, if the presumed father does not intervene the court may terminate his rights in the child without him ever being a party to the proceeding. *Id.* § 78B-6-112(5)(c).

¶43 Finally, in some ways the two laws provide for substantively different proceedings. The proceedings are similar in that the grounds for termination are the same under both acts. *See id.* §§ 78A-6-507, 78B-6-112(5)(e). The Adoption Act cross-references the factors that are found in the Termination of Parental Rights Act. *Id.* § 78B-6-112(5)(e).

¶44 But because terminations under the Termination of Parental Rights Act do not necessarily include a permanent placement for the child, that Act contemplates continued juvenile court review hearings until a permanent placement is found. *Supra* ¶ 35. And it does not completely foreclose reunification. *Supra* ¶ 36.

¶45 In contrast, when parental rights are terminated under the Adoption Act and the court enters an adoption decree, that Act does not provide for continued court involvement. A new parent-child relationship has been formed. *Id.* § 78B-6-103(2)(a)–(b). The former parent's rights in and obligations to the child are extinguished. *Id.* § 78B-6-138. And there is no provision for reunification with the parent whose rights were terminated.

¶46 In sum, when a potential adoptive parent petitions for a termination of another's parental rights under the Adoption Act, except for the cross-reference to the grounds for termination, the petitioner follows the provisions of the Adoption Act, not the parallel provisions of the Termination of Parental Rights Act. And in numerous ways, those provisions are different.

---

within 30 days after the day on which the person was served with notice of the adoption proceeding: (i) waives any right to further notice in connection with the adoption; (ii) forfeits all rights in relation to the adoptee; and (iii) is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee.").

*C. Adoptive Parents' Petition*

¶47 Here, Adoptive Parents filed the petition to terminate Father's parental rights under the Adoption Act. *See id.* §§ 78B-6-112(1), -133. It was filed in the district court as part of the adoption proceeding. *See id.* § 78B-6-112(2)(a). The district court had jurisdiction over the termination proceeding only because Adoptive Parents sought the termination to facilitate the adoption of the child. *See id.* § 78B-6-112(1). Adoptive Parents initially notified Father of the adoption petition as required by the Adoption Act. *See id.* § 78B-6-110(2), (5). And Father had to move to intervene to be included in the proceeding. *See id.* § 78B-6-110(6)(a). He was not automatically a party as he would have been had the termination been brought under the Termination of Parental Rights Act.

¶48 Yet Father argues the termination is a proceeding under the Termination of Parental Rights Act, even though it was brought under the Adoption Act, because the Adoption Act references the grounds for termination outlined in the Termination of Parental Rights Act.[11] *See id.* § 78B-6-112(5)(e). We disagree with Father's reasoning. The Adoption Act's cross-reference to the grounds for termination found in the other act does not mean that a contested termination brought under the Adoption Act actually arises under the Termination of Parental Rights Act. *See Anderson v. Anderson*, 416 P.2d 308, 309–10 (Utah 1966) (concluding where one statute merely cross-references another statute, the entirety of that referenced statute is not necessarily incorporated into the other). It means only that the same considerations apply whenever a termination is sought, whether or not it is in connection with an adoption. The cross-reference to the shared grounds for termination does not take this proceeding outside of the Adoption Act.

¶49 We conclude that the language and structure of the Adoption Act make clear that a termination petition such as the one here, which is brought under sections 112 and 133 in connection with an adoption, is a proceeding under the Adoption Act. The Adoption Act contemplates that an adoption involves

---

[11] He acknowledges that certain types of termination arise under the Adoption Act—for example, a voluntary relinquishment or a failure to intervene. *Id.* § 78B-6-112(5)(a)–(c).

both the judicial act that "creates the relationship of parent and child where it did not previously exist," and "terminates the parental rights of any other person with respect to the child." UTAH CODE § 78B-6-103(2). And the Act establishes a particular framework that permits potential adoptive parents to petition for termination if the adoption is contested.[12] *Id.* §§ 78B-6-112, -133.

¶50 Accordingly, we conclude that the instant termination petition and related proceedings are "adoption proceedings" as defined in the UCCJEA. We affirm the court of appeals' determination that the UCCJEA does not govern subject matter jurisdiction here. Because we find the UCCJEA inapplicable, we do not address whether the court of appeals erred in concluding

---

[12] Father argues that if we conclude the Adoption Act unambiguously permits the district court to exercise its jurisdiction to terminate an out-of-state parent's parental rights without first complying with the UCCJEA, we should reject such a reading as absurd. We "will not apply the absurdity doctrine unless 'the operation of the plain language . . . [is] so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner.'" *Bagley v. Bagley*, 2016 UT 48, ¶ 28, 387 P.3d 1000 (alterations in original) (citation omitted). So the absurdity doctrine applies "only if the legislature could not reasonably have intended the result." *Id.* But it appears that the legislature did intend for Utah district courts to exercise jurisdiction over adoption proceedings potentially involving out-of-state individuals whose consent is required, such as Father. The Adoption Act states that "[i]f a person whose consent for the adoption is required . . . cannot be found within the state, the fact of the minor's presence within the state shall confer jurisdiction on the court in proceedings under this chapter as to such absent person," provided the person was given proper notice. UTAH CODE § 78B-6-105(4)(a). Service of notice also vests the court with jurisdiction over the person. *Id.* § 78B-6-105(5). Of course, in such circumstances the person whose consent is required will not necessarily give it. This provision seems to necessarily contemplate Utah courts exercising jurisdiction in an adoption proceeding involving an out-of-state person whose consent is required, which could lead to a contested termination proceeding. Accordingly, we reject Father's absurdity argument.

that the requirements of that statute would have been met if it did apply.

## II. INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN

¶51 We now address Father's argument that the court of appeals erred in remanding the case to the district court for supplemental factfinding regarding compliance with the ICPC. The court of appeals concluded that Mother's ICPC request form was defective because she listed D.G. instead of Father as the child's father. *In re Adoption of B.H.*, 2019 UT App 103, ¶ 28, 447 P.3d 110. But the court held that this defect did not deprive the district court of jurisdiction or otherwise require dismissal of the adoption petition. *Id.* However, because the district court did not include a conclusion that the ICPC "ha[d] been complied with" in the adoption decree—as required by the Adoption Act, UTAH CODE § 78B-6-107(1)(a)—the court of appeals set aside the decree. *In re Adoption of B.H.*, 2019 UT App 103, ¶ 30. It then remanded to the district court for additional factfinding, and if necessary to give Adoptive Parents an opportunity to cure the ICPC deficiency before moving for reinstatement of the decree. *Id.* ¶ 27 n.7. Neither party has contested the court of appeals' determination that the ICPC request was materially defective, so that issue is not before us.

¶52 Father contends it was error for the court of appeals to remand to the district court for additional factfinding and to permit the Adoptive Parents to cure the ICPC deficiency if necessary. He asserts that the ICPC must be complied with before filing an adoption petition and that the failure to do so constitutes an irreparable jurisdictional defect. He contends that because the ICPC notice was defective, Mother's attempt to invoke the jurisdiction of Utah courts is invalid and the deficiency can no longer be cured.[13] Father asserts that this means Montana has

---

[13] The court of appeals also observed that Mother might have complied with the ICPC through a cover letter that identified Father as her husband, but this document was not submitted in the district court. So Father argues that the court of appeals should not have remarked upon this letter. We do not consider this letter in our analysis.

jurisdiction over the child and that any new ICPC request must be filed in Montana.

¶53 We agree with the court of appeals that the deficient ICPC request form does not deprive the Utah court of jurisdiction. A reading of the ICPC reveals that it does not purport to govern jurisdiction among party states or strip jurisdiction from a receiving state as a remedy for a violation of its terms.

¶54 The ICPC "provides a uniform legal framework for the placement of children across State lines in foster homes and[] adoptive homes." CRS REPORT FOR CONGRESS, RL32070, INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN: ICPC, 1 (2003). It is a compact among party states[14] "to cooperate with each other in the interstate placement of children" to ensure that (1) children requiring placement "receive the maximum opportunity to be placed in a suitable environment"; (2) the receiving state "may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child"; (3) the sending state "may obtain the most complete information on the basis of which to evaluate a projected placement before it is made"; and (4) "[a]ppropriate jurisdictional arrangements for the care of the children will be promoted." UTAH CODE § 62A-4a-701 art. I(1)–(4). Its "chief function . . . is to protect the interests of children and of the States by requiring that certain procedures be followed in the making and the maintenance of interstate child placements." CRS REPORT FOR CONGRESS, RL32070, INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN: ICPC, 1 (2003).

¶55 To this end, the ICPC requires that a "sending agency" comply with its terms and with any applicable laws of the

---

[14] The ICPC "is a statutory agreement between all [fifty] states, the District of Columbia and the US Virgin Islands." Am. Pub. Hum. Servs. Ass'n, ICPC FAQ'S, https://aphsa.org/AAICPC/AAICPC/icpc_faq_2.aspx#:~:text=T he%20Interstate%20Compact%20on%20the%20Placement%20of% 20Children%20(ICPC)%20is,and%20the%20US%20Virgin%20Islan ds.&text=It%20sets%20forth%20the%20requirements,be%20place d%20out%20of%20state (last visited July 23, 2020).

receiving state that govern the placement of children in that state. UTAH CODE § 62A-4a-701 art. III(1). A "sending agency" is:

> [A] party state, officer, or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, Indian tribe, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state.

*Id.* § 62A-4a-701 art. II(2). Here, Mother is the "sending agency" because she is the "person" who caused the child to be sent to Utah with Adoptive Parents.

¶56 Father is correct that Mother was required to comply with the ICPC before sending the child to Utah with Adoptive Parents. *See id.* § 62A-4a-701 art. III(2) (requiring compliance "[p]rior to sending, bringing, or causing any child to be sent or brought into a receiving state for placement").

¶57 However, it does not follow that her deficient attempt to do so constitutes an irreparable jurisdictional defect. The ICPC addresses the consequences of a failure to comply with its terms, and none of them involve transferring jurisdiction over the child from the receiving state to the sending state or reversing a child placement. The ICPC provides that a violation of its provisions constitutes a violation of "the laws respecting the placement of children" of both the sending state and the receiving state. *Id.* § 62A-4a-701 art. IV. And such a violation "may be punished or subjected to penalty in either jurisdiction in accordance with its laws." *Id.* Father does not identify a law in either state that would require a reversal of the placement or a loss of jurisdiction in Utah under the circumstances here.

¶58 Additionally, the ICPC provides that in the case of a violation by a sending agency, "any violation shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children." *Id.* Notably, this provision focuses on penalties and punishments directed at the noncompliant entity. It does not provide for reversing the placement that resulted from the violative behavior or the loss of jurisdiction over the child in the receiving state. We agree with the court of appeals that the penalties for noncompliance contemplated in the ICPC do not

"divest the district court of jurisdiction." *In re Adoption of B.H.*, 2019 UT App 103, ¶ 28.

¶59 Father also asserts that because Mother's attempt to invoke the jurisdiction of Utah courts was lacking, the sending jurisdiction retains jurisdiction. But that is incorrect. One provision of the ICPC speaks to "retention of jurisdiction." *See* UTAH CODE § 62A-4a-701 art. V. It states,

> The *sending agency* shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state.

*Id.* § 62A-4a-701 art. V(1) (emphasis added). This preserves the *sending agency's* jurisdiction over the child, not the *sending state's* jurisdiction over the child.[15] Here, that is Mother; not Montana.[16]

---

[15] This provision is concerned with the child's care, not jurisdiction between member states. It preserves the sending agency's jurisdiction over and financial responsibility for the child until another individual or entity, including the child, assumes responsibility for the child or the child "is discharged with the concurrence of the appropriate authority in the receiving state." UTAH CODE § 62A-4a-701 art. V(1).

[16] Father relies on *In re Adoption of T. M. M.* for support. 608 P.2d 130 (Mont. 1980). In that case, the prospective adoptive parents did not comply with the ICPC at all. *Id.* at 133. The biological mother, who had relinquished her parental rights, challenged the adoption and sought to revoke her own relinquishment. *Id.* at 132. The Montana Supreme Court held that "the failure of the prospective adoptive parents to comply with the terms and procedures of the [ICPC] constitute[d] full and sufficient grounds for the revocation of the parent's consent." *Id.* at 134 (internal quotation marks omitted). The Montana Supreme Court appears to have equated the revocation of the mother's consent with the "suspension or revocation of any license, permit, or other legal authorization held by the sending agency." *Id.*

(Continued . . .)

¶60 Father also argues that because the Adoption Act requires compliance with the ICPC, the adoption is invalid because of the defective ICPC request. Father is correct that the Adoption Act requires compliance with the ICPC. *See id.* § 78B-6-107(1)(a) (stating "in any adoption proceeding . . . the court's final decree of adoption shall state that the requirements of [the ICPC] have been complied with"). However, the Adoption Act does not provide for a dismissal of the adoption petition or a loss of jurisdiction as a result of noncompliance.

¶61 The provision of the Adoption Act that most closely addresses the circumstances here functions similarly to the ICPC—it provides for remedies against the alleged wrongdoer. Utah Code section 78B-6-106(2) states,

> Any person injured by fraudulent representations or actions in connection with an adoption is entitled to pursue civil or criminal penalties in accordance with existing law. A fraudulent representation is not a defense to strict compliance with the requirements of this chapter and *is not a basis for dismissal of a petition for adoption, vacation of an adoption decree, or an automatic grant of custody to the offended party.* Custody determinations shall be based on the best interests of the child, in accordance with the provisions of Section 78B-6-133.

(Emphasis added.) Accordingly, even assuming Mother knowingly made a fraudulent misrepresentation on the ICPC request form, the Adoption Act explicitly rejects dismissal of the petition or transfer of custody to Father as a consequence.

¶62 We agree with the court of appeals that the ICPC deficiency in this case is not a jurisdictional defect. Neither the ICPC nor the Adoption Act provides for a loss of jurisdiction in the Utah district court or a dismissal of the adoption petition under these circumstances.

¶63 Even so, we also agree with the court of appeals that it is necessary to set aside the adoption decree in its current form and remand to the district court for further proceedings. The Adoption Act requires that the district court state in the adoption decree

---

(citation omitted). We are not inclined to adopt this interpretation of the language of the ICPC.

that the ICPC was complied with. And although the district court concluded that the requirements of the Adoption Act had been met, the court did not support this conclusion with the necessary determination of ICPC compliance.

¶64 As we have explained, this deficiency is not a jurisdictional defect. Neither the ICPC nor the Adoption Act requires dismissal of the petition or a loss of jurisdiction in the district court. But the fact remains that the district court's conclusions of law in support of the adoption decree are insufficient. Accordingly, we set aside the decree and remand to the district court for further proceedings. We leave the form and scope of those proceedings to the district court's discretion.

## CONCLUSION

¶65 We affirm. We agree with the court of appeals that the Adoption Act rather than the UCCJEA governs subject matter jurisdiction over the termination petition. Accordingly, the district court had subject matter jurisdiction over this proceeding. We also conclude that the deficient ICPC request form is not a jurisdictional defect under the ICPC or the Adoption Act. However, the district court's conclusions of law in support of the adoption decree were inadequate. We set aside the adoption decree and remand to the district court for further proceedings consistent with this opinion.